[Civ. No. 41380. Second Dist., Div. Four. Oct. 19, 1973.]

ALICE C. TYLER, as Executrix, etc., Plaintiff and Respondent, v. CRAIG R. NORTON et al., Defendants and Appellants.

718

## COUNSEL

Fidler & Bell, Early, Maslach, Foran & Williams, Thomas C. Underwood and Ronald W. Fidler for Plaintiff and Respondent.

W. Dickerson Milliken, Richard L. Franck and Parker, Milliken, Kohlmeier, Clark & O'Hara for Defendants and Appellants.

## OPINION

**KINGSLEY, J.**—Plaintiff[1] sued for breach of a written contract for the purchases of corporate stock. After a nonjury trial, he recovered judgment. Defendants have appealed; we affirm.

### I

We first consider a procedural matter which lies at the heart of the trial court's jurisdiction.

The action is a simple[2] action for breach of a written contract. It was filed on July 12, 1971. On August 10, 1971, defendants filed their answer.

---

[1] The original plaintiff was John C. Tyler; after judgment, and during the progress of this appeal, Mr. Tyler died. Alice C. Tyler, the executrix of his estate, has been substituted as party appellant. For convenience we use the term "plaintiff" to refer to John Tyler.

[2] In saying that the case was a "simple" breach of contract suit we mean only that only monetary damages for the breach were sought. We do not deprecate the complexity of the factual and legal issues that developed at the trial on the merits.

On October 8, 1971, defendants filed a demand for jury trial. That filing was reflected on the register of actions, but, for reasons unexplained and apparently unknown, the original document was lost and has never appeared in the superior court file. On October 20, 1971, plaintiffs filed an "At Issue" memorandum, indicating a one-day trial. On November 11, 1971, the clerk issued his notice of assignment as a *nonjury* trial on December 30, 1971. On November 12, 1971, pursuant to stipulation, plaintiff filed an amended complaint, to which defendants filed an answer on November 18, 1971. On December 6, 1971, defendants filed a motion to vacate the trial setting and to set the case for trial as a *jury* trial. That motion was heard on December 14, 1971, in department 1 of the superior court. The minutes of that hearing show (by a rubber stamp) "Motion Granted." Those minutes also recite the vacation of the December 30th trial date and that "On the Court's Own Motion" the cause was to trail on January 5, 1972.[3] A declaration (not contradicted on the record before us) by the attorney[4] who appeared for defendants at the December 14, 1971, hearing in department 1, recites the following occurrences with reference to the motion to set the case for jury trial:

"c. Mr. Fidler responded that defendants did not ask for a jury soon enough and were not entitled to it since it was a matter in equity in which there was no right to trial by jury. He then argued to the court, among other matters, his theory of the nature of the case and generally outlined his version of the facts and the issues before the court on the motion.

"d. The court responded to Mr. Fidler by indicating that plaintiffs should be willing to let defendants have a jury trial inasmuch as they would have a far less chance of prevailing with a jury. He then stated that he would continue the case until Mr. Franck's return from the out of State trip set forth in his Declaration, but that he was not presently going to rule on the jury trial request. He did not state that the motion was either granted or denied regarding the jury trial request and finally concluded the hearing by indicating that if defendants want to make a motion at trial for a jury, that plaintiff should agree."[5]

---

[3] The *register of actions* shows, on *the entry for the* December 14, 1971, hearing, "Cause trailed to 1-5-72"; there is no reference to the other part of defendants' motion.

[4] Because of illness, the principal counsel for defendants could not appear at the December 14, 1971, hearing; defendants were represented by counsel's office associate.

[5] We have been furnished with a transcript of the December 14th hearing, certified by the official court reporter then assigned to department 1. That transcript supports the paraphrase given in counsel's declaration.

■ Trial counsel for defendants alleges, in declarations filed by him, that he relied on those statements by the judge, as reported to him by his associate, and prepared for jury trial on January 5, 1972. When he arrived in department 1, on that day, he discovered that the daily calendar listed the case as "non-Jury."[6] He avers that he concluded that, in the meantime, the court had decided to rule on the motion and had denied it. (He asserts he was unaware of the minute order until much later.) Assuming that his attempt to secure a jury had been futile, he went to the assigned trial department (department 54) and proceeded to a nonjury trial without objection. He did not raise the jury trial issue in the trial department until he made it a ground for a new trial motion, which was denied.

While defendants had not "waived" jury trial by any of the methods set forth in section 631 of the Code of Civil Procedure, it nevertheless follows that defendants cannot, on this appeal rely on any error in the assignment of the case. We agree that the information available to counsel on January 5, 1972, was confusing. He nevertheless was advised that the judge in department 1 had indicated an opinion that the motion could properly be made in a trial department. Nothing prevented him from renewing his motion at that time and place.[7] Defendants cannot play "Heads I win, Tails you lose" with the trial court. After proceeding, without objection, to try their case for two days before a judge, they may not, after losing, raise the procedural issue. (*Glogau* v. *Hagan* (1951) 107 Cal.App.2d 313 [237 P.2d 329].)

## II

The parties to this action, together with two other men, owned all of the stock of Nordril, Inc., a Liberian corporation, plaintiff owning 12½ percent of the issued stock. The corporation had been engaged in oil drilling operations in Argentina but, as the result of expropriation of its Argentine assets by that government, it held notes (pagares), the value of which was, at the time of the contract herein involved, uncertain. Tyler desired to get out of the Nordril company and offered to sell his stock in exchange for a 12½ percent share of the proceeds of the pagares, when, as and if

---

[6]A photostatic copy of the printed calendar of department 1 for December 14, 1971, is incorporated in counsel's declaration; it supports his allegation of that fact.

[7]In addition to the fact that the judge in department 1 had suggested that he apply to the judge in the trial department, counsel must have been aware that section 631 of the Code of Civil Procedure expressly allows a court to grant a jury trial although one has theretofore been "waived" by a statutory method. Defendants offer no excuse for not seeking to invoke the trial judge's discretionary power.

received by Nordril. With the approval of the other stockholders, defendants, on July 15, 1965, executed a written agreement with plaintiff, reading as follows:

"WITNESSETH:

It is agreed between the parties as set forth hereinafter:

"1. Seller agrees to deliver a properly endorsed stock certificate for seventy-five (75) shares of Nordril, Inc., a Liberian Corporation, to Buyers.

"2. Buyers agree jointly and severally to indemnify Seller against any loss, including interest paid, Seller may suffer as the result of that certain guarantee executed by Seller in favor of Bankers Trust Company of New York guaranteeing the payment of Eighteen Thousand Seven Hundred Fifty Dollars ($18,750.00) borrowed from Bankers Trust Company by Nordril, Inc., said guarantee being dated January 1 1965. Buyers agree to reimburse Seller for any such loss within ten (10) days of the date of payment by the Seller and, if such reimbursement is not promptly made, further agree to pay Seller interest at the rate of 6% per year, beginning ten (10) days after notification to Buyers that Seller has been required to advance funds because of the obligation incurred by Seller as the result of said guarantee, and continuing until Seller has been fully reimbursed for all funds paid out under terms of said guarantee.

"Buyers agree that all net proceeds deriving from any sale of equipment of Nordril, Inc., which is now located in the Republic of Argentina, or any net proceeds received by Buyers as the result of any settlement with the Argentine government, with respect to said equipment in the Republic of Argentina, will be transferred to Seller promptly upon receipt of same, whether such proceeds be in the form of installment or lump sum payments. The net proceeds shall be computed on the basis of seventy-five (75) shares of Nordril, Inc., stock being 12½ % of the total outstanding stock of said Nordril, Inc.

"IN WITNESS WHEREOF, Seller and Buyers have executed this agreement for sale and purchase of seventy-five (75) shares of the common stock of Nordril, Inc. on the 15th day of July, 1965.

> /s/ "JOHN C. TYLER
> 
> JOHN C. TYLER
> 
> /s/ "CRAIG R. NORTON
> 
> CRAIG R. NORTON
> 
> /s/ "HAL J. WEBB
> 
> HAL J. WEBB"

Ultimately, payments on the pagares in the total amount of $258,749.13 were received by Nordril; plaintiff received, by checks drawn on Nordril accounts, six payments, totaling $24,033.94. The present action is for the balance of $12,281.26, plus interest.

■ Plaintiff contended in the trial court, and contends here, that the agreement created a personal obligation on the part of defendants, measured by the proceeds to Nordril from the pagares. Defendants admit that the first paragraph of paragraph 2 of the agreement (indemnifying plaintiff against loss on his guarantee of Nordril obligations) was a personal obligation assumed by them as individuals, but they contend that the remainder of that paragraph (providing for the purchase price of the Nordril shares) was a corporate obligation and not one assumed by them as individuals.

After a two-day trial, at which there was substantial evidence from the three parties concerned, together with documentary evidence, interrogatories and answers to them, the trial court found for plaintiff and awarded to him the sums prayed for.

We conclude that the trial court correctly interpreted the agreement. The first draft of the agreement was prepared by Webb; Tyler's nephew, an attorney, made some minor modifications in the portion dealing with the indemnity paragraph, but left unchanged the paragraph herein pertinent. In form it is a contract by defendants as individuals. It admittedly is obligatory in part on them as individuals. A rational reading is that both parts of paragraph 2 were by the same obligors.

Defendants urge, as we understand them, three contentions in favor of their position:

(a) ■ Such payments as were made were in the form of checks drawn by Nordril on its corporate account; plaintiff made no objection to payment in that form. The argument is non-persuasive. The use of corporate funds to meet the personal obligations of the controlling stockholders of a closely held corporation is not unusual. Recipients are, unless otherwise warned, entitled to assume that their debtor has made proper arrangements with the corporation for payments by it on his account.

(b) (4) The corporate minutes of Nordril, entered two years later, purported to treat the Tyler shares as belonging to the corporation, ratifying the payments made by Nordril to plaintiff, and distributing the Tyler shares (together with shares of another minority stockholder acquired after the Tyler transaction) among the remaining stockholders "in amounts such

that their relative percentage ownership of the stock of Nordril, Inc., does not change." We agree with the trial court that this unilateral action, two years later, unknown to plaintiff, sheds no light on the intent of the parties to the agreement of July 1965.

(c) ■ Defendants argue that, if construed as plaintiff contends and the trial court found, the agreement would be illegal, as constituting an attempt by them to dispose of corporate assets. Clearly, if the agreement is construed to make the receipt by Nordril of payment of the pagares merely the measure of the amount and the fixing of the time for defendants to meet their conditional obligation to plaintiff, there is no possible illegality. The value of defendants' interest in the assets of Nordril would be increased by Nordril's receipt of the pagares payments; defendants then would be better able to transfer to plaintiff the equivalent of that increase in the value of their stockholdings.

An agreement is to be construed as valid if reasonably possible. (1 Witkin, Summary of Cal. Law (7th ed. 1960) § 222, pp. 250-251.) We apply that canon here.

### III

■ Defendants complain that the trial court did not make more detailed findings of fact. The controlling finding, as made by the trial court, was as follows: "1. On July 15, 1965 at Los Angeles, California, plaintiff and Defendants entered into a valid contract admitted into evidence as Plaintiff's Exhibit 1." But, for a party to complain on appeal of the insufficiency of findings, the alleged deficiency must be "brought to the attention of the trial court either prior to entry of judgment or in conjunction with a motion under Section 657 or 663." (Code Civ. Proc., § 634.) Defendants state in their brief that: "On motion for a new trial filed pursuant to Section 657, defendants brought to the attention of the trial court that the findings prepared by plaintiff were devoid of any mention of the following: (1) The defense that defendants executed the contract as officers and agents of the corporation and not as individuals and that this lends legality to the contract, and (2) that the evidence that plaintiff Tyler expected the pagare payments to be the source of his consideration was substantially uncontradicted." We have read from the clerk's transcript the papers filed in connection with the new trial motion and the reporter's transcript of the argument on that motion. Nowhere can we find any suggestion that

defendants desired any additional findings; their effort was to convince the trial court that the finding above quoted was in error. This is not a compliance with section 634.

The judgment is affirmed.

Files, P. J., and Dunn, J., concurred.

A petition for a rehearing was denied November 14, 1973, and the opinion was modified to read as printed above. Appellants' petition for a hearing by the Supreme Court was denied December 14, 1973.