[Civ. No. 67465. Second Dist., Div. Three. Dec. 22, 1983.]

DAVID ESCAMILLA et al., Cross-complainants and Appellants, v.
CALIFORNIA INSURANCE GUARANTEE ASSOCIATION,
Cross-complainant and Appellant;
TERHEGGEN BROTHERS AND MALONE, INC.,
Cross-defendant and Respondent.

54

**COUNSEL**

Michael L. Robins for Cross-complainants and Appellants.

Clausen, Harris & Campbell, Lon Harris and Marie D. Clause for Cross-complainant and Appellant.

Bolton, Dunn & Moore and William W. Sampson for Cross-defendant and Respondent.

**OPINION**

**FRISCO, J.*—**This is an appeal from a judgment entered in favor of respondent California Insurance Guarantee Association (CIGA), following a

---

*Assigned by the Chairperson of the Judicial Council.

trial to the court. As a protective measure CIGA appeals that judgment in favor of cross-defendant Terheggen Brothers and Malone, Inc., (Terheggen) as to CIGA's cross-complaint.

### PROCEDURAL AND FACTUAL BACKGROUND

Appellants (Escamillas) were, on July 27, 1976, awarded a judgment in. Los Angeles Superior Court against Melvin W. Crites d/b/a Two C's Club (Crites) in the sum of $100,000 in a wrongful death and personal injury action.

The judgment was expressly conditioned so that it could be executed against an insurance policy previously issued by Reserve Insurance Company (Reserve). Reserve refused to pay or satisfy that judgment and subsequently filed an action against Escamillas entitled "Complaint for Declaratory Relief," contending that it was not obligated to indemnify Crites or compensate the Escamillas on that judgment.

Escamillas filed an answer denying the allegations of said complaint together with a cross-complaint against Reserve to collect the judgment, whereupon Reserve filed a cross-complaint against Terheggen, the agency who sold Crites the policy in question, for indemnity.

Thereafter, Reserve became insolvent and CIGA was properly substituted for Reserve.

The case proceeded to trial on the first cause of action only of Escamillas' third amended cross-complaint to enforce their judgment against Crites. Each party had separately demanded a jury trial and Escamillas posted jury fees timely. The case was designated on the court's calendar for August 11, 1981, as a jury trial for breach of contract.

On August 25, 1981, the matter was assigned to the Honorable Paul G. Breckenridge, Jr., for trial. The court proceeded to try the matter without a jury and rendered judgment for CIGA on Escamillas' action. The prosecution of CIGA's cross-complaint never went forward as to Terheggen (that matter having been dismissed by the court on motion of Terheggen's counsel) in view of the court's judgment in favor of CIGA against Escamillas.

### ISSUES ON APPEAL

1. Were the parties (Escamillas) entitled to a jury trial?

2. Did Escamillas waive their right to a jury trial?

3. Was the denial of Escamillas' right to a jury trial prejudicial error?

4. In the event this court reverses the trial court's judgment as to Escamillas, should this court also reverse Terheggen's judgment against CIGA?

## DISCUSSION

### THE PARTIES WERE ENTITLED TO A JURY TRIAL

■ California Constitution article I, section 16 provides litigants with the right to a jury trial. That right exists only as to actions based upon the common law of 1850, at the time the Constitution was adopted. (*People* v. *One 1941 Chevrolet Coupe* (1951) 37 Cal.2d 283 [231 P.2d 832].)

■ Whether a jury trial is required, in essence, depends upon the nature of issues as equitable or legal. Equitable issues are resolved without a jury, while legal issues are determined by a jury when that right has been invoked and properly preserved. (*Abbott* v. *City of Los Angeles* (1958) 50 Cal.2d 438 [326 P.2d 484].) ■ The fact that the initial action (Reserve's complaint) sought declaratory relief, of itself, was not determinative of the issues as either legal or equitable. (*State Farm etc. Ins. Co.* v. *Superior Court* (1956) 47 Cal.2d 428 [304 P.2d 13]); (*Dills* v. *Delira Corp.* (1956) 145 Cal.App.2d 124 [302 P.2d 397].) Although Reserve's complaint against Escamillas, requesting an interpretation and construction of their policy regarding their liability as to indemnification of Crites may have sounded in equity, the action was ultimately tried on Escamillas' cross-complaint to collect on their judgment. ■ Where equitable and legal issues are joined in the same actions, the parties are entitled to a jury trial on the legal issues. (*Robinson* v. *Puls* (1946) 28 Cal.2d 664 [171 P.2d 430].) ■ In essence, the issue was: What was the agreement between Crites and Terheggen as to the type of coverage to be extended by Reserve?

Directly in point is *Interinsurance Exchange* v. *Savior* (1975) 51 Cal.App.3d 691 [124 Cal.Rptr. 239]. In that matter Paul M. Savior (Savior) was injured by an automobile driven by Anne Pisano, who, along with her husband owned an insurance policy issued by Interinsurance Exchange (Exchange). Said Exchange thereafter filed a complaint seeking declaratory relief that Mrs. Pisano was not covered by the policy, naming the Pisanos and Savior as defendants. The Pisanos defaulted but Savior answered asserting affirmative defenses. The trial court denied Savior his right to a jury trial and held in favor of the Exchange. In holding that Savior was entitled to a jury trial the court stated: "It is clear that an action by an insurance company against its putative insured, seeking a declaration that no coverage exists, is one in which a jury trial is a matter of right, since the declaratory

relief action has been substituted for an action at law for breach of contract. [Citations.] Thus, as against the Pisanos, a jury was required, on demand, although their default made it unnecessary as to them. [¶] Appellant is in exactly the same position. If he had waited until he secured a judgment in his personal injury suit against the Pisanos and then had instituted an action against their insurer under the direct action statute[1] [citation] his suit would have been one for damages on the insurance contract, in his capacity as a third party beneficiary of that contract. [Citation.] Actions seeking contractual damages are obviously within that class of case as to which a jury trial is a matter of right. [Citation.] The fact that the respondent chose here to anticipate such litigation by suing appellant in declaratory relief, does not make this any less of an action where legal issues are to be tried. [Citation.] Therefore, in the abstract, appellant was entitled to a jury trial, having made proper demand therefor." (*Id.,* at p. 694.)

The court held, however, that since there were no issues of fact for a jury to decide, the denial of a jury trial was not prejudicial error.

### Escamillas Waived Their Right to a Jury Trial

Code of Civil Procedure sections 631 and 631.01 set forth the circumstances and conditions under which a trial by jury may be waived. Subdivisions 8 and (c) of those sections respectively provide that a waiver of jury occurs, "[w]hen the party who has demanded trial by jury either *waives* such [jury] trial upon or *after* assignment for trial to a specific department of the court . . . ." (Italics ours.) ▮ The fact of that waiver may be expressed by conduct as well as words.

▮ The trial court in this cause made a finding that Escamillas waived their right to a jury trial and we are satisfied that the record amply supports that finding.

When one gleans this record and assembles the pertinent data, as we shall do, there emerges a mosaic, depicting a clear and vivid jury waiver.

▮ In *Medico-Dental etc. Co.* v. *Horton & Converse* (1942) 21 Cal.2d 411 at page 432 [132 P.2d 457], the Supreme Court stated that "[w]aiver may be shown by conduct; and it may be the result of an act which, according to its natural import, is so inconsistent with the intent to enforce

---

[1]Insurance Code section 11580, subdivision (b) (requiring policy provisions) states in pertinent part: "(2) [a] provision that whenever judgment is secured against the insured . . . in an action based upon bodily injury, death or property damage, then an action may be brought against the insurer on the policy and subject to its terms and limitations, by such judgment creditor to recover on the judgment."

the right in question as to induce a reasonable belief that such right has been relinquished." ■■■ With that standard as a guide, let us then test it to this appeal.

After assignment for trial and prior to its commencement, an unreported conference took place in the court's chambers. When the court and counsel emerged, a rather complex action was simplified by the court stating on the record that the matter would proceed as to just one cause of action by Escamillas against CIGA and CIGA's action against Terheggen. The following took place in the presence of all counsel of record on appeal.

"THE COURT: The action by the cross . . . the Reserve . . . versus Terheggen . . . captioned as declaratory relief and indemnity alleges . . . a controversy . . . and it would appear to the Court that both the action in which we're proceeding are equitable in nature and the matter would be appropriately tried by the Court.

*"Do you have any comments in that regard?"*

Only Mr. Sampson (counsel for Terheggen) objected and argued that his clients were entitled to a jury trial and made that request for them on the indemnity issue. The request was denied. Neither Mr. Harris (counsel for CIGA) nor Mr. Robins (counsel for Escamillas) objected to a court trial or demanded a jury trial for their clients. They chose not to answer the court's question and remained silent.[2]

The court then indicated that it was uncertain, procedurally, as to what order the case was to proceed. Just prior to the first witness being called, the court stated: "Lets deal with one problem at a time. [To Mr. Robins] Why don't you call your first witness.

"If you have objections—we don't have a jury here—if you have objections, I'll rule on the objections as they are made."

Following a two day trial, the court indicated it would render judgment against the Escamillas.

At no time after the matter was assigned to the trial court did Mr. Robins object, on the record, as to the cause being tried to the court without a jury, or demand, on the record, a jury trial for Escamillas. The first mention, on the record as to that subject, took place several weeks later, when the Escamillas moved for a new trial.

---

[2]The court minutes of August 21, 1981, reflect that only Terheggen moved for a jury trial and that said motion was denied.

A dispute arose at the hearing of the motion for new trial as to what had transpired during the unreported conference in chambers preceding the trial.[3]

In support of the motion Mr. Robins submitted an affidavit indicating a willingness to waive jury in behalf of Escamillas.[4]

Counsel (Mr. Robins) argues that the trial court was not under the impression that the Escamillas had agreed to waive their right to a jury trial, since the minutes of the trial do not reflect such a waiver, and that such failure to make that entry in the court's minutes was fatal to an effective waiver of a jury trial.

Counsel's first point assumes, of course, that courtroom clerks make no errors of omission and there is no reason or need for the nunc pro tunc provisions of the code.

---

[3]Mr. Robins: "I did not ever intend to waive a jury trial in this case. In fact, I had indicated my unwillingness to do so. . . .

"MR. HARRIS: First of all, Your Honor, addressing the issue of waiver first I would totally disagree with plaintiffs' counsel. I believe there was, in fact, a waiver in chambers when you first announced that you thought this was an equitable action and a jury trial would be denied. The only person that took exception to your intended announcement and decision was the cross-complainant, Mr. Sampson. . . . . [¶] THE COURT: Well, Mr. Robins, I have about had it up to my ears already on this baldfaced pronouncement of yours which doesn't reflect what occurred here and I am really distressed by it because you want it both ways in this lawsuit. When this case came up to this Department, counsel came into chambers and discussed the matter with the Court. There was a discussion generally about whether you wanted a Court trial or whether the parties wanted a jury trial. [¶] It is my recollection and even you have said in your declaration that you said that you would be willing to have a Court trial if all the issues could be tried by the Court. . . . [¶] THE COURT: [to Mr. Robins] You came into chambers. You said you were willing to try the case to the Court as long as all the issues would be tried to the Court. If there were some of them going to be tried to the jury, then you wanted a jury trial or words to that substance and effect. I looked at the cross-complainant because the only person that was talking about a jury trial was Mr. Sampson, it is my recollection, and I haven't seen a transcript of what I said out here in the courtroom. It is my recollection that my evaluation of the equitable nature of the case related to the equitable nature of the Cross-Complaint, and that I was telling Mr. Sampson that he had no right to a jury trial on the Cross-Complaint, so that all issues could be tried by the Court regardless of Mr. Sampson's feelings. That was the basic reaction I had to what occurred. This is my basic feeling about the case.

"Now it came out in chambers and I gave the parties an opportunity, I believe, to express their feelings about whether they wanted a Court or jury trial. Mr. Sampson, as I recall, was the only one that talked about his right to a jury trial. . . .

"At no time did you ever say you wanted a jury trial. Your clients were sitting there in the courtroom. At no time did they say they wanted a jury trial . . . and it just was a shock to me to read your Motion for a New Trial on the ground that after a two-day trial when there wasn't one word said about having a jury trial to come in and say we wanted a jury trial. I think that is really outrageous."

[4]"During the course of that conference [in chambers preceding the trial], I indicated that the Escamillas might be willing to consider waiving a jury if all of the other parties were agreeable to waiving a trial by jury on all issues."

As to the absence of a minute order affecting the waiver, that issue was answered in *Greenstone v. Claretian Theol. Seminary* (1958) 158 Cal.App.2d 493 [322 P.2d 482]. In that case the plaintiff (appellant), during the course of the trial, amended her complaint. The court, in viewing that amended complaint, indicated that, thereafter, the jury's function would be advisory only. Counsel so agreed. The appellate court found that the waiver had been effected by plaintiff's counsel's agreement, despite the failure to record the waiver in the minutes as required by Code of Civil Procedure section 631.

Also in point is *Tyler v. Norton* (1973) 34 Cal.App.3d 717 [110 Cal.Rptr. 307], where the court stated at page 722: "While defendants had not 'waived' jury trial by any of the methods set forth in section 631 of the Code of Civil Procedure, it nevertheless follows that defendants cannot, on this appeal rely on any error in the assignment of the case."

In support of their position that there was no jury waiver, the Escamillas cite *City of Redondo Beach v. Kumnick* (1963) 216 Cal.App.2d 830 [31 Cal.Rptr. 367]. We agree there was no evidence, as to that matter, in the record to support the trial court's finding that there was a jury waiver. In summary, that appeal involved an action by the city in eminent domain concerning property owned by defendant Guarino, who appeared in propia persona. Prior to trial, each party had demanded a jury trial. On the date of trial the court noted that jury fees had not been posted. Thereafter the city and the remaining defendant waived jury. Guarino stated to the court that he was not prepared to post the fees. The appellate court ruled that failure to post the fees did not constitute a waiver, as Code of Civil Procedure section 631.5 required the plaintiff, in condemnation proceedings, to post such fees. What is of value, however, is the court's language at page 836: "But regardless of the conflict (as to what occurred in chambers), the *conduct and statements of the trial judge in open court immediately after the conference in chambers appear to be the best evidence of what was said* [in chambers]." (Italics ours.)

In the pending matter, at the conclusion of the conference in chambers, the court was of record (10:40 a.m.) as to the issues to be tried and then immediately proceeded to the issue of jury trial. Upon the court's stating its belief as to the parties' right to a jury trial, the first question asked by the court was: "Do you have any comments in that regard?" The court in essence is saying, "if you want a jury trial, convince me why you should have one." All counsel, save Mr. Sampson, remained mute on the subject until the motion for a new trial was sought. Is it not fair and reasonable to assume that the word "you" in the court's question is the second person plural? Of course, if that is the proper construction and interpretation of the

question, Mr. Robins' failure to reply to a direct question was an acquiescence[5] and an agreement with the court that the Escamillas were not entitled to a jury trial and an acknowledgment that they had waived same. Under those circumstances, his failure to reply constituted a waiver.

If the court had been addressing only Mr. Sampson, then the court would not have limited that question to him unless the court was informed or led to believe by Mr. Robins and Mr. Harris that their respective clients had wished to waive their right to a jury trial. (See fn. 4.)

In point is *Tyler* v. *Norton, supra,* 34 Cal.App.3d 717, where the defendant demanded a jury trial. The demand was reflected on the register, but apparently was lost and never appeared in the superior court file. Counsel made a timely motion for a jury trial. The motion was deferred for ruling to the day of trial. On the trial date the case was listed as a nonjury in department 1 and defense counsel concluded that the motion for jury trial had been denied. The court stated at page 722: "Assuming that his attempt to secure a jury had been futile, he went to the assigned trial department . . . and proceeded to a nonjury trial without objection. *He did not raise the jury trial issue in the trial department until he made it a ground for a new trial motion, which was denied.* [¶] . . . He nevertheless was advised that the judge in department 1 had indicated an opinion that the motion could properly be made in a trial department. Nothing prevented him from renewing his motion at that time and place. Defendants cannot play 'Heads I win, Tails you lose' with the trial court. After proceeding, without objection, to try their case for two days before a judge, they may not, after losing, raise the procedural issue." (Italics ours.)

The Supreme Court's disposition and treatment of counsel's failure to object to the court's excusing of the jury and concluding the action as a court trial in *Taylor* v. *Union Pac. R. R. Corp.* (1976) 16 Cal.3d 893 [130 Cal.Rptr. 23, 549 P.2d 855], is controlling here. In that matter, pursuant to plaintiffs' demand, a jury had been selected and trial had commenced on July 25, 1972. On August 2, 1972, plaintiffs no longer wished a jury and the defendants then paid those fees, with the trial continuing before a jury. On August 7, 1972, defendants no longer wished a jury trial and declined to post additional jury fees. The matter was brought to the court's attention for the first time. The question then arose as to whether the plaintiffs could still maintain a jury trial by posting the jury fees. When the court erro-

---

[5]During oral argument Mr. Robins represented that the question was directed only to Mr. Sampson. In reply to this court's inquiry as to why counsel did not object to the matter being tried by the court without a jury, Mr. Robins stated that he was taken by surprise, was not familiar with the law that made the matter triable to a jury as a matter of right, and was not aware of any legal position to the contrary.

neously ruled that plaintiffs, on August 2, 1972, had finally and irretrievably waived their right to a jury trial, the following colloquy took place: "THE COURT: All right. Now is there anything you want to say at this time, Mr. Berman? I am about to call the jury in and tell them that this case will be disposed of without them. [¶] MR. BERMAN: [Plaintiffs' counsel] Well, at this time, Your Honor, I don't think there is very much for me to say other than the fact that—THE COURT: Any legal objection to the contemplated action? . . . MR. BERMAN: *I don't know that I have a basis at this point or would even contemplate a basis for any objection."* (P. 897.) (Italics ours.)

When plaintiff on appeal argued that once the court had ruled in the fashion it had, any objection thereafter would have been futile, the Supreme Court responded at pages 900-901 as follows: "Plaintiffs argue that it would have been an 'idle act' to ask the trial court for relief from the prior waiver, or to demand a jury trial, in light of the court's expressed opinion that plaintiffs' original waiver remained in effect. . . . [¶] The fact remains that plaintiffs at no time informed the trial court that they believed they still retained a right to jury trial. Rather they acquiesced in the court's interpretation of events. . . . The record, fairly read, indicates that the trial court repeatedly asked for plaintiffs' counsel's views on the question, and once inquired whether plaintiffs had 'any objection to the contemplated action?' Plaintiffs' counsel, rather than affirmatively stating the position now asserted on appeal, merely replied that he felt the court was making unfair inferences regarding counsel.

█ "An objection to a court's contemplated ruling is indeed often an 'idle act' in the sense that the objection may have no effect upon the court's decision. On the other hand, a proper objection might well succeed, thereby obviating an unnecessary appeal. Legal points of this nature must be presented on appeal by a record supporting trial assertion of the claim. A party must preserve his record. █ Thus, *it is well established* that '. . . *a party cannot without objection try his case before a court without a jury, lose it and then complain that it was not tried by a jury.'* . . . Our review of the record indicates that plaintiffs' counsel, while carefully inquiring regarding the trial court's position on the waiver question, neither himself demanded a jury trial or objected to the court's ruling. Under such circumstances, plaintiffs cannot now be heard to complain of that ruling." (Italics ours.)

█ Had Mr. Robins objected and insisted on his clients' right to a jury, the trial court would have given the matter further consideration.[6]

---

[6]The court: "If you had wanted a jury trial, you should have said so at the time and we'd have given some further evaluation to your client's position if they had a position that was different than yours."

Once counsel initiated and announced a desire to waive a jury trial, he had an obligation to apprise the court (relying on that representation) that his clients intended to retain their right to a jury trial. He should have, on the record, and preferably prior to commencement of trial, informed the court that his clients desired to retain their right to a jury trial, objected to a trial by the court without a jury and demanded that their right to a jury trial be recognized.

Failure to do any one of the above prior to the court's announced intended decision, constituted a waiver.

Having found that the Escamillas had waived their right to a jury trial, the remaining issues are moot and need not be resolved in this appeal.

The judgment is affirmed.

Klein, P. J., and Lui, J., concurred.

A petition for a rehearing was denied January 17, 1984, and the petition of appellants Escamilla for a hearing by the Supreme Court was denied April 4, 1984. Bird, C. J., was of the opinion that the petition should be granted.