Filed 5/29/14  Rhoades v. Lansdale CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| RUFUS VON THULEN RHOADES, | B243879 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BC448478) |
| v. | |
| WILLIAM M. LANSDALE et al., | |
| Defendants and Appellants. | |

APPEAL from a judgment and postjudgment order of the Superior Court of the County of Los Angeles, Deirdre Hill, Judge.  Affirmed.

Lurie, Zepeda, Schmalz & Hogan, Kurt L. Schmalz and Lawrence J. Imel for Plaintiff and Respondent.

Brown Rudnick, Ronald Rus, Joel S. Miliband, and Cathrine M. Castaldi for Defendant and Appellant William M. Lansdale.

David M. Danny for Defendant and Appellant Southern California Financial Corporation.

# INTRODUCTION

Plaintiff and respondent Rufus von Thulen Rhoades (Rhoades) served as an attorney for defendant and appellant William Lansdale (Lansdale), including for Lansdale's corporation,[1] for over 40 years. In 2005, Rhoades and Lansdale executed a letter agreement pursuant to which Lansdale agreed to pay Rhoades, upon the happening of certain contingencies, $3,000,000 for past attorney services rendered. In 2010, after Rhoades had not received any payment under the letter agreement, he sued Lansdale and Financial Corporation. Following trial, a jury returned a verdict in favor of Rhoades, awarding him $3,000,000 for, inter alia, breach of the letter agreement, and the trial court entered judgment on that breach of contract claim.

On appeal, Lansdale and Financial Corporation challenge, inter alia, the denial of their motion for new trial, contending that the judgment on the contract claim is contrary to law because the letter agreement did not comply with certain statutory requirements and was therefore voidable at the client's election. In response, Rhoades argues that Lansdale and Financial Corporation expressly waived their right to void the letter agreement under the statutes in question, and are otherwise barred from raising the voidability issue on appeal because it is contrary to the theory upon which they tried the case and because they ratified that agreement by suing on it.

We hold that Lansdale and Financial Corporation expressly waived, and under the related doctrines of estoppel and theory of the case are otherwise barred from relying upon, any right they may have had to void the letter agreement under the statutes in question. We therefore affirm the judgment based on breach of that agreement.

---

[1] Lansdale is the sole shareholder of codefendant and appellant Southern California Financial Corporation (Financial Corporation).

2

**FACTUAL BACKGROUND**[2]

Lansdale and Rhoades had a long-standing attorney-client relationship spanning over four decades in which Rhoades provided a wide array of legal advice and services to Lansdale individually and to Lansdale's business entities, including Financial Corporation. Rhoades's advice and services pertained to numerous business and personal matters involving, inter alia, Lansdale's oil and gas business and real estate development projects. In his capacity as Lansdale's attorney, Rhoades often acted as Lansdale's general counsel and hired, orchestrated, and supervised any outside counsel or law firms retained to represent Lansdale or his corporate entities, including Financial Corporation. Lansdale relied on Rhoades's expertise and advice in directing any litigation and making strategy decisions intended to be made in a manner most beneficial to Lansdale's business pursuits.

At the beginning of Rhoades's relationship with Lansdale, Rhoades was compensated pursuant to a "pretty standard" arrangement under which Rhoades's firm would bill Lansdale for the time Rhoades recorded for services rendered, and Lansdale would pay those bills. After approximately four years, the compensation arrangement "shifted" to a more informal structure under which Lansdale would pay Rhoades "whatever [Lansdale] thought was fair" after Lansdale received revenue from a given project on which Rhoades had worked. The last payment Lansdale made to Rhoades under this informal arrangement was in 1993 when Lansdale paid Rhoades "a partial payment on Rhoades's legal fees" of $125,000 so that Rhoades could buy a house. Although Rhoades continued to provide legal services for Lansdale and his companies, Rhoades received no further payment from Lansdale after 1993.

---

**2**    Because, as explained below, we resolve this appeal on procedural grounds, we summarize the evidence that supported the verdict to provide context for the ensuing discussion.

Subsequent to the 1993 payment, Rhoades and Lansdale would discuss Rhoades's outstanding legal fees every two or three months. In 2005, during a lunch, Lansdale told Rhoades that he wanted to "work out [Rhoades's] legal fee" and offered to pay Rhoades $2,000,000. When Rhoades made a counter offer of $3,000,000, Lansdale said, "That is fine. . . . Let's go back upstairs and put something in writing." After discussing the matter, Lansdale and Rhoades executed a letter agreement in December 2005 (2005 letter agreement) that provided, inter alia, for the payment of $3,000,000 upon the happening of certain contingencies.[3]

Notwithstanding the execution of the 2005 letter agreement, neither Lansdale nor Financial Corporation made any payments to Rhoades under that agreement. In July

---

[3] The two-page letter agreement provided, in pertinent part, as follows: "Dear Rufe [Rhoades]: This is the letter that I told you I would give to you when we talked about your legal fees yesterday at lunch. The purpose of this letter is to agree with you on the question of the value of all that you have done for me over the years for which you have never been paid. So, with the idea that I want to pay you for all of the services you have rendered to me for which I have not paid, here is my idea: 1. Seal Beach Property When the government pays Seal Beach Company for the property the Navy condemned, I will pay you $500,000. (We already have this part in writing.) 2. Assignment Fee/Sandwich Position This one is in the alternative, because we do not know what the Association will do. A. Assuming the Marina Pacifica Homeowners Association indicates that it wants to purchase the Assignment Fee/Sandwich Position, I will pay you $500,000 from the proceeds of any sale of that position. (I say 'any sale' because I might want to sell it to a third party rather than the Association.) B. Alternatively, I may start receiving increased Assignment Fee payments from the homeowners on and after October 1, 2006. In that event, I will pay to you each month $3333.00, starting with October 1, 2006, until someone does buy my position. I may want to delay payment to you if the homeowners delay those increased payments to me. 3. All Other Work You have really done a good deal of work on a number of other matters for me over the years. For all of that work I will pay you $2,000,000, the payments to be on the same day I make the first payment to you on the Assignment Fee/Sandwich Position matter. Those payments are to cover all of your legal work for me or any entity of mine (such as a trust, any LLC, etc.) Further, I expect you to wrap up all current matters without any additional fee. So, if this is okay with you, then we have a deal. Let me know. . . . P.S. Without your tremendous amount of work and backing I would not have been able to accomplish this. Thank you, your Pal, Bit [Lansdale]."

4

2010, Rhoades resigned as Lansdale's attorney and as an officer of Lansdale's companies. This litigation followed Rhoades's resignation.

## PROCEDURAL BACKGROUND

Rhoades filed a complaint against Lansdale and Financial Corporation asserting causes of action for breach of contract, quantum meruit, and account stated. The breach of contact cause of action was based on the alleged failure of Lansdale and Financial Corporation to pay Rhoades the attorney fees he was due under the 2005 letter agreement.

Lansdale and Financial Corporation answered the complaint and asserted nine affirmative defenses, but none of those defenses was based upon the voidability of the 2005 letter agreement under Business and Professions Code section 6148, Rule 3-300 of the Rules of Professional Conduct (Rule 3-300), or Probate Code section 16004 (the voidability defenses).[4] Lansdale and Financial Corporation subsequently filed a cross-complaint against Rhoades asserting, inter alia, a breach of contract cause of action based on the 2005 letter agreement, specifically asserting that Rhoades had failed to "wrap up" existing legal matters for Lansdale as required under the agreement. The cross-

---

[4] Business and Professions Code section 6148 provides, inter alia, that a contract for legal services must be in writing, state any basis of compensation, and specify the nature of the legal services to be provided. Rule 3-300 provides that an attorney cannot enter into a business relationship with a client unless the transaction is fair and disclosed to the client in writing, the client is advised in writing of the right to seek advice from an independent attorney, and the client thereafter consents to the transaction in writing. Probate Code section 16004, subdivision (c) provides that a transaction between a trustee and beneficiary during the existence of a trust is presumed to be a violation of the trustee's fiduciary duties. Agreements that violate the requirements of these statutes may be voided at the client's option. (Bus. & Prof. Code § 6148, subd. (c) ["Failure to comply with any provision of this section renders the agreement voidable at the option of the client"]; *Fair v. Bakhtiari* (2011) 195 Cal.App.4th 1135, 1154 [violations of "Rule 3-300 and section 16004 make the underlying agreements 'voidable not void,' at the election of the client"].)

5

complaint, however, did not seek, in the alternative, a declaration that the 2005 letter agreement was void. Prior to trial, the parties reached a settlement on the cross-complaint only, and the trial court dismissed it with prejudice.

Approximately two months prior to the scheduled trial date, Lansdale and Financial Corporation filed a motion for leave to amend their answer to assert affirmative defenses based on Rule 3-300 and Probate Code section 16004.[5] Each of the proposed affirmative defenses asserted that the 2005 letter agreement was voidable at the election of Lansdale and Financial Corporation based on Rhoades's failure to comply with the requirements of the statutes on which those defenses were based. Rhoades opposed the motion for leave to amend the answer on the grounds that (i) it was untimely; (ii) the proposed affirmative defenses contradicted judicial admissions made in prior pleadings, including the cross-complaint; and (iii) the proposed affirmative defenses did not apply to the 2005 letter agreement. At the hearing on the motion to amend the answer, the trial court denied the motion as untimely and because the relief sought would be prejudicial to Rhoades given the pending trial date.

Based on the denial of the motion for leave to amend, Rhoades filed a motion in limine seeking to exclude evidence that the 2005 letter agreement was invalid or unenforceable based on noncompliance with the statutes underlying the voidability defenses. Lansdale and Financial Corporation did not oppose the motion, and as discussed in more detail below, the trial court granted the motion based on the stipulation of the parties.

Following trial, the jury returned a verdict in favor of Rhoades on all three of his causes of action, awarding him $3,000,000 on each cause of action. The trial court then instructed Rhoades's counsel to prepare a "judgment for $3 million only and with interest calculate[d] based upon the date of the breach and with the jury's verdict on the various questions." Rhoades's counsel thereafter submitted a proposed judgment on special

---

[5] The motion to amend did not mention an affirmative defense based on Business and Professions Code section 6148, but the proposed amended answer lodged with the motion contained an affirmative defense based on that section.

6

verdict, and the trial court entered it after amending it by interlineation to clarify that the judgment was based on the first cause of action for breach of contract only.

Following entry of the judgment, Lansdale and Financial Corporation filed motions for new trial and judgment notwithstanding the verdict. The motion for new trial was based on, inter alia, the assertion that the judgment was contrary to law because the 2005 letter agreement was void due to Rhoades's noncompliance with Business and Professions Code section 6148 and Rule 3-300. The trial court denied both motions, and Lansdale and Financial Corporation filed timely notices of appeal from the judgment.

## DISCUSSION

### A. Standard of Review and Other Relevant Principles

The parties disagree as to the appropriate standard of review on appeal. Lansdale and Financial Corporation contend that a de novo standard governs because the challenge they raise to the judgment based on the voidability defenses involves an issue of law that can be determined on undisputed facts. Rhoades argues that a substantial evidence standard controls because the contention on appeal that the judgment was contrary to law requires a determination of whether the judgment was supported by substantial evidence.

The parties' contentions as to the applicable standard of review are directed at the merits of the issues raised on appeal. Because we resolve the appeal on procedural grounds, however, we do not need to determine which standard of review would govern the merits of the appeal. Instead, three related principles of appellate review govern our determination of the dispositive procedural issue. First, it is well established that "'"an appellant may waive his right to attack error by expressly or impliedly agreeing at trial to the ruling or procedure objected to on appeal."'" (*Mesecher v. County of San Diego* (1992) 9 Cal.App.4th 1677, 1685-1686 [12 Cal.Rptr.2d 279]; see *K.C. Multimedia, Inc. v. Bank of American Technology & Operations, Inc.* (2009) 171 Cal.App.4th 939, 950 [90 Cal.Rptr.3d 247].)" (*Lockaway Storage v. County of Alameda* (2013) 216 Cal.App.4th 161, 181 (*Lockaway*); *In re Marriage of Broderick* (1989) 209 Cal.App.3d 489, 501 ["an

7

appellant waives his right to attack error by expressly or implicitly agreeing or acquiescing at trial to the ruling or procedure objected to on appeal"].)  Second, "'"[u]nder the doctrine of invited error, where a party, by his conduct, induces the commission of an error, he is estopped from asserting it as grounds for reversal."'" (*Lockaway, supra,* at p. 181.)  Third, "'"[t]he rule is well settled that the theory upon which a case is tried must be adhered to on appeal.  A party is not permitted to change his position and adopt a new and different theory on appeal.  To permit him to do so would not only be unfair to the trial court, but manifestly unjust to the opposing litigant."' (*Cable Connection, Inc. v. DIRECT TV, Inc.* (2008) 44 Cal.4th 1334, 1350-1351, fn. 12, 2d par. [82 Cal.Rptr.3d 229, 190 P.3d 586].)"  *Humane Society of U.S. v. Superior Court* (2013) 214 Cal.App.4th 1233, 1272-1273 (*Humane Society*).)

### B.     Waiver, Estoppel, and Theory of the Case

#### *1.      Background*

As noted, the answer filed on behalf of Lansdale and Financial Corporation did not include affirmative defenses based on the voidability of the 2005 letter agreement. Similarly, the cross-complaint did not seek declaratory relief based on the voidability of the 2005 letter agreement and instead sought affirmative relief based on that agreement. And, although Lansdale and Financial Corporation belatedly sought to amend their answer to assert the voidability defenses, the trial court denied that motion, and Lansdale and Financial Corporation did not seek appellate review of that ruling either prior to trial in a writ proceeding or after judgment on appeal.

Based on the trial court's ruling denying the motion for leave to amend the answer, Rhoades filed a motion in limine that expressly sought to exclude evidence in support of the voidability defenses.  Lansdale and Financial Corporation did not oppose that motion, and at the hearing on the motion, the following discussion took place between and among the trial court and counsel for the parties.  "[Defendants' Counsel]: We would not have an opposition to acknowledging that the—the exhibit—the December

contract or [2005 letter] agreement is an agreement that was signed by [Rhoades], signed by [Lansdale]. In fact, we have stipulated to it; its admissibility in evidence but the—I need [to clarify] on that one that we [do] not, by agreeing to that motion in limine, eliminate our ability to put on [parol] evidence regarding the prior or contemporaneous discussion[s between Lansdale and Rhoades] that is not inconsistent and corroborates what we have been discussing. [¶] The Court: That would be resolved in the context of the first phase of the trial [to determine whether parol evidence would be admissible] we already discussed. [¶] [Defendants' Counsel]: Correct. [¶] The Court: So, it seems to me this already has been admitted in terms of it being a validly executed and enforceable agreement. The court would assume that to be the case. Based upon the stipulations that I have already received and the representations that have been made, I am not sure that a motion in limine is even necessary on this. Are you going to be arguing that it wasn't validly executed or anything like that? [¶] [Defendants' Counsel]: No, but I want to make sure that I preserve the [parol evidence] arguments that I have been making. [¶] The Court: With that understanding, the court would grant the motion in limine to the extent that *the court finds the parties have stipulated that it is an enforceable agreement and that it is validly executed.* The context of what is more than that I would allow you to present and for me to decide in the course of the first phase of the—of the trial. So, it preserves all our concerns I think. [¶] [Defendants' Counsel]: One additional one, just to be a lawyer about it, is that by agreeing with your Honor, I am not waiving my modification [contention] for purposes of this hearing, for purposes of appeal.[6] [¶] The Court: I understand. That is understood. Okay. We will see you tomorrow. [¶] [Defendants' Counsel]: Thank you, your Honor. [¶] [Rhoades's Counsel]: Thank you, your Honor. [¶] The Court: Was there anything else that I needed to discuss? [Rhoades's Counsel]: The ruling on the second motion in limine, that will be reduced to a minute order? [¶] The Court: It will be contained in the minute order. The court is

---

6    Just before trial, Lansdale and Financial Corporation sought leave to amend their answer to assert an affirmative defense based on modification of the 2005 letter agreement, which motion the trial court denied.

9

going to find there is a stipulation that the agreement is enforceable rather than a minute order, and that the agreement is validly executed in response to a motion in limine." (Italics added.)

Following the hearing, the trial court issued a minute order that read in pertinent part: "Motion in Limine No. 2 To Exclude Any and All Evidence, Testimony and Argument at Trial That the Agreement Signed by the Parties on December 22, 2005 Is Invalid Or Unenforceable is granted to the extent the Court finds the parties stipulate the Agreement is an enforceable agreement and validly executed."

During trial, counsel for Lansdale and Financial Corporation did not raise the voidability defenses and instead tried the case on the theory that certain conditions precedent to the payment obligation under the 2005 letter agreement had not occurred. Moreover, during closing argument, counsel for Lansdale and Financial Corporation explained, "There was a contract. We agree Exhibit 56 [the 2005 letter agreement] was signed by both parties and it is binding." It was not until the judgment on the breach of contract claim was entered in favor of Rhoades that counsel for Lansdale and Financial Corporation raised the voidability defenses in their motion for new trial.

### 2.    *Analysis*

Lansdale and Financial Corporation contend that the trial court's judgment was contrary to law because, under the statutes on which the voidability defenses were based, the 2005 letter agreement was voidable at their election. Rhoades contends that Lansdale and Financial Corporation waived by stipulation the right to void the 2005 letter agreement, otherwise ratified the 2005 letter agreement by suing on it, and, in any event, are barred from raising the voidability defenses on appeal because they are contrary to the theory on which their case was tried—i.e., the payment obligation under the 2005 letter agreement had not accrued because certain contingent events had not occurred at the time of trial.

By expressly stipulating on the record that the 2005 letter agreement was validly executed and enforceable as against the voidability defenses, Lansdale and Financial

10

Corporation waived any right they may have had to rely on those defenses at trial and on appeal. As the court explained in *Winograd v. American Broadcasting Company* (1998) 68 Cal.App.4th 624, "'A stipulation is a contract . . . , and is sometimes said to be governed by the usual rules of construction of other contracts. [Citations].' (1 Witkin, Cal. Procedure (4th ed. 1996) Attorneys, § 304, pp. 373-374.) A contract must be interpreted so as to give effect to the mutual intent of the parties. (Civ. Code § 1636.) The terms of a contract are determined by objective rather than by subjective criteria. The question is what the parties' objective manifestations of agreement or objective expressions of intent would lead a reasonable person to believe. (See, e.g., *Meyer v. Benko* (1976) 55 Cal.App.3d 937, 942-943 [127 Cal.Rptr. 846]; 1 Witkin, Summary of Cal. Law (9th ed. 1987) Contracts § 684 et seq., p. 617 et seq.)" (*Id.* at p. 632.)

From the record of the hearing on Rhoades's motion in limine relating to the voidability defenses, including the objective manifestations of intent made by counsel for the parties,[7] the trial court reasonably concluded that Lansdale and Financial Corporation were agreeing not to rely on the voidability defenses at trial, choosing instead to try the case on the theory that no payment obligation under the 2005 letter agreement had accrued because certain contingencies had not been satisfied. Given the clarity of the record in this case, it is unfair—and unpersuasive—to contend otherwise on appeal. "'[F]airness is at the heart of a waiver claim. . . . In our adversarial system, each party has the obligation to raise any issue or infirmity that might subject the ensuing judgment to attack. [Citation.] Bait and switch on appeal not only subjects the parties to avoidable expense, but also wreaks havoc on a judicial system too burdened to retry cases on

---

[7] There is no dispute that counsel for Lansdale and Financial Corporation was authorized to enter into the stipulation on their behalf. "Trial counsel is authorized to exercise his independent judgment with respect to strategic litigation decisions. (See, e.g., *In re Horton* (1991) 54 Cal.3d 82, 95 [284 Cal.Rptr. 305, 813 P.2d 1335].)" (*Cadle Co. v. World Wide Hospitality Furniture, Inc.* (2006) 144 Cal.App.4th 504, 510 (*Cadle*).) "In a trial, an attorney has control over the presentation of evidence and can enter into stipulations without the client's concurrence. (*Kim v. Orellana* (1983) 145 Cal.App.3d 1024 [193 Cal.Rptr. 827]; *Jacoby v. Feldman* (1978) 81 Cal.App.3d 432 [146 Cal.Rptr. 334].)" (*Hayman v. Block* (1986) 176 Cal.App.3d 629, 634, fn. 5.)

theories that could have been raised earlier.' (*JRS Products, Inc. v. Matsushita Electric Corp. of America* (2004) 115 Cal.App.4th 168, 178 [8 Cal.Rptr.3d 840].)" (*Lockaway, supra*, 216 Cal.App.4th at p. 182.)

In response to the waiver issue, Lansdale and Financial Corporation contend that the record is unclear concerning the scope and effect of the parties' stipulation on the voidability defenses. According to Lansdale and Financial Corporation, the trial court expanded their counsel's oral stipulation, which they claim merely agreed that the 2005 letter agreement had been signed by the parties. In addition, they point to a comment made by Rhoades's counsel in a colloquy with the trial court during which he stated that there might not be an agreement, in which case Rhoades's quantum meruit claim would be viable.

The record on the stipulation concerning the voidability defenses is not unclear. Counsel for Lansdale and Financial Corporation agreed with and acquiesced in the trial court's comments, which, when read in context, were limited to the voidability defenses that were the basis of Rhoades's motion in limine, i.e., the trial court found, based on the parties' stipulation, that the 2005 letter agreement was validly executed and enforceable as against the voidability defenses. As for the comment by Rhoades's counsel concerning the possibility that the jury may find that there was no agreement concerning attorney fees, it merely acknowledged that, notwithstanding the stipulation on the voidability defenses, Rhoades had the burden of proving each element of his breach of contract claim and recognized the potential that the jury might conclude that there had been no meeting of the minds. That comment was not directed at the voidability defenses for the very reason that, due to the stipulation, those defenses were not an issue in this case.

Moreover, under the related concept of estoppel, Lansdale and Financial Corporation, by their conduct in the trial court, are barred from asserting the voidability defenses on appeal. As explained above, during the pleading and pretrial stages of the litigation, Lansdale and Financial Corporation not only failed to raise the voidability defenses in their answer, they sued Rhoades on the 2005 letter agreement, the same

12

agreement that they now claim is voidable on appeal. That litigation conduct, together with the stipulation concerning the voidability defenses discussed above, estops Lansdale and Financial Corporation from attempting to assert those defenses as grounds for reversal on appeal. As the court observed in *Law Offices of Ian Herzog v. Law Offices of Joseph M. Fredrics* (1998) 61 Cal.App.4th 672 (*Herzog*), "'These two positions are entirely inconsistent. The courts will not recognize or tolerate such tactics. A party cannot thus "blow hot and cold." [Citations.] The courts would be impotent indeed if they were compelled to approve such duplicity. Under elementary principles, even if the point were sound, which it is not, [appellant] has waived or is estopped from successfully urging it.'" (*Id.* at p. 679.)

On the estoppel issue, Lansdale and Financial Corporation assert that the equitable doctrine is not applicable to the facts of this case because they did not benefit from suing on the 2005 letter agreement or from agreeing that it was validly executed and enforceable as against the voidability defenses. In addition, they argue that Rhoades did not rely to his detriment on their position concerning the enforceability of the 2005 letter agreement. We disagree.

By suing on the 2005 letter agreement, stipulating that it was validly executed and enforceable, and asserting the position that no payment obligation had accrued thereunder because certain conditions precedent to payment had not been satisfied, Lansdale and Financial Corporation benefited because they were able to negotiate a pretrial settlement with Rhoades on their cross-complaint and were able to argue to the jury, albeit unsuccessfully, that they had no liability to Rhoades under the 2005 letter agreement. Similarly, Rhoades suffered detriment by relying on the stipulation and assuming that the voidability defenses would not be an issue at trial and, therefore, not be an issue on appeal. (See *Herzog, supra,* 61 Cal.App.4th at p. 679 [allowing an appellant to assert on appeal a position that squarely contradicts a stipulation he made in the trial court "would work a great injustice on [the respondent] who relied on the stipulation to his detriment by going through with the arbitration in the belief it would be binding"].) As explained by the court in *Cadle, supra,* 144 Cal.App.4th at p. 511 "[a party] may not simply sit by

13

in silence, take his chances on a favorable judgment and then, after an adverse judgment, complain on appeal. In short, a party may not play a game of "'Heads I win, Tails you lose" with the trial court.' (*Tyler v. Norton* (1973) 34 Cal.App.3d 717, 722 [110 Cal.Rptr. 307].)"

Finally, Lansdale and Financial Corporation are barred from raising the voidability defenses on appeal under the theory of the case doctrine. "'It is a firmly entrenched principle of appellate practice that litigants must adhere to the theory on which a case was tried. Stated otherwise, a litigant may not change his or her position on appeal and assert a new theory.'" (*Tesoro Del Valle Master Homeowners Assn. v. Griffin* (2011) 200 Cal.App.4th 619, 630.)

The record demonstrates that throughout the pleading and pretrial stages, Lansdale and Financial Corporation adhered to the theory that no payment obligation had accrued under the 2005 letter agreement because certain contingencies had not occurred and they strategically avoided any reliance on the voidability defenses. They likely did so because even if they were successful in voiding the 2005 letter agreement, they would nevertheless face potential liability to Rhoades under the quantum meruit claim, instead of the potential of no liability to him under their theory of the case. Thereafter, although they belatedly and unsuccessfully raised the voidability defenses in a motion for leave to amend, they subsequently stipulated that they would not rely on them at trial and honored that stipulation through trial and judgment. Having made a conscious and voluntary choice to try the case on one theory, they cannot adopt and rely on a new and different theory on appeal.

Lansdale and Financial Corporation argue that because their challenge to the judgment based on the voidability defenses raises an issue of law that can be determined on undisputed facts, they can raise it for the first time on appeal. Although there is an exception to the theory of case doctrine, based on a pure issue of law applied to undisputed facts, that exception is not applicable here.

"We recognize we have discretion whether to consider new issues, and appellate courts often do so if the issue involves legal questions of public interest. (*Resolution*

14

*Trust Corp. v. Winslow* (1992) 9 Cal.App.4th 1799, 1810 [12 Cal.Rptr.2d 510].) '"There are many situations where appellate courts will consider [matters raised for the first time on appeal]. They will often be considered where the issue relates to questions of law only. [Citations.] *Appellate courts are more inclined to consider such tardily raised legal issues where the public interest or public policy is involved.* [Citations.] And whether the rule shall be applied is largely a question of the appellate court's discretion." [Citations.]' (*Ibid*; see *Avalos v. Perez* (2011) 196 Cal.App.4th 773, 776-777 [127 Cal.Rptr.3d 106] [appellate court has discretion to consider new issues where public interest is involved].)" (*Humane Society, supra*, 214 Cal.App.4th at p. 1273, italics added.)

The exception to the theory of the case doctrine described above does not apply here because, based on the record, it is not clear that the application of the voidability defenses is a pure question of law. Because those defenses were removed from the case prior to trial, Rhoades had no motive or opportunity to introduce evidence that may have shown that those defenses were inapplicable to the 2005 letter agreement. For example, Rhoades may have been able to show that Lansdale was estopped by his conduct or statements from relying on the statutory requirements underlying the voidability defenses. Moreover, even assuming the challenge to the judgment based on the voidability defenses raised a pure question of law, Lansdale and Financial Corporation do establish that the issue is one of public interest or public policy, presumably because it is not. This is a dispute between parties over legal fees, which dispute is not a matter of public interest. Even if voidability might involve public policy, voidability in this case does not. If the contract were void, Rhoades would still be entitled to quantum meruit, if possible (e.g. Bus & Prof. Code, § 6148, subd. (c)), which was also a basis for the jury verdict. Because allowing Lansdale and Financial Corporation to raise that issue would be fundamentally unfair and manifestly unjust under the circumstances of this case, we are not inclined to exercise our discretion to consider it for the first time on appeal.

15

## DISPOSITION

The judgment and postjudgment order from which Lansdale and Financial Corporation appeal are affirmed.  Rhoades is awarded his costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS


MOSK, J.


We concur:


TURNER, P. J.


KRIEGLER, J.