[No. B183821. Second Dist., Div. Eight. Oct. 31, 2006.]

THE CADLE COMPANY, Plaintiff and Respondent, v.
WORLD WIDE HOSPITALITY FURNITURE, INC., et al., Defendants and
Appellants.

## COUNSEL

Cohon & Pollak, Jeffrey M. Cohon, William M. Andrews, Kristina S. Keller; Adams, Aucoin & Kessler and Gary Kessler for Defendants and Appellants.

Brewer & Brewer, Templeton Briggs and James R. Knoles for Plaintiff and Respondent.

OPINION

BOLAND, J.—

## SUMMARY

In a contract action brought by a bank's successor in interest against a suspended corporation and an individual guarantor, the trial court precluded the corporation from presenting a defense and entered judgment against it. Defense counsel waived jury on behalf of the individual guarantor and, following a court trial, judgment was entered against the guarantor. On appeal, the corporation and guarantor argue: (1) the jury waiver was unenforceable; (2) the action is time-barred; (3) the successor in interest's request for contractual attorney's fees was procedurally improper; (4) the trial court should have granted a continuance to permit the corporation to secure a revivor, rather than entering judgment against it; and (5) a partial reversal of the judgment is required to permit the now reinstated corporation to present a defense. For the reasons discussed, we agree with the last two contentions, but not the first three.

## PROCEDURAL AND FACTUAL BACKGROUND

This action for breach of promissory note and breach of written guaranty was filed September 30, 2003, by The Cadle Company against World-Wide Rattan, Inc., and Isaac Gonshor. Cadle alleged that, on December 10, 1990, Gonshor, acting on behalf of Rattan as its president, executed a written loan and security agreement (Agreement) for a $400,000 line of credit with Cadle's predecessor in interest, Columbia National Bank. Contemporaneous with his execution of the Agreement on Rattan's behalf, Gonshor signed a general continuing guaranty (Guaranty), personally guaranteeing Rattan's debt to the bank, and "all loans, advances, or financial accommodations . . . hereafter granted by [the bank] to or for the account of [Rattan] . . . ." including, "all sums which shall in the future become due and owing from [Rattan] whether arising under the Agreement or otherwise." The Guaranty states it is a "continuing guaranty" and "shall remain effective during the term of the Agreement and relates to any Obligations, including those which arise under successive transactions which shall either cause [Rattan] to incur new Obligations, continue the Obligations from time to time, or renew them after they have been satisfied, until this Guaranty has been expressly terminated."[1]

---

[1] The Agreement defines "Obligations" to include "all loans, advances, debts, liabilities . . . covenants and duties owing by [Rattan] to [the bank] of any kind or description (whether or not evidenced by [the Agreement], any note or other instrument or any other agreement between Bank and [Rattan] . . . now existing or hereafter arising . . . ."

Cadle further alleged that, on behalf of Rattan, Gonshor executed a change in terms agreement (Change Agreement) with the bank on August 11, 1992, refinancing Rattan's remaining debt under the Agreement totaling approximately $235,700. The Change Agreement provides for principal payments of $105,000 and $25,000 on August 17 and October 10, 1992, respectively, with weekly principal payments of $1,000 thereafter for 63 weeks.[2] The Change Agreement extends to December 31, 1993, the maturity date for payment of the final balance of all principal and interest owed. The Change Agreement also contains a waiver of the statute of limitations. In addition, both the original Agreement and the Change Agreement include attorney's fee provisions.

The Federal Deposit Insurance Corporation (FDIC) later became the receiver for the bank. Thereafter, Cadle claims it became the FDIC's assignee on and holder of Rattan's debt. Cadle sent acceleration letters to Gonshor individually and on behalf of Rattan. This suit was initiated after the letters went unanswered.

An answer to the complaint was filed on behalf of Gonshor and "World Wide Hospitality Furniture, Inc., a California corporation erroneously sued herein as Worldwide Rattan, Inc., a defunct California corporation." Cadle then amended its complaint substituting World Wide Hospitality Furniture, Inc. (Hospitality), for fictitious Doe Defendant No. One.

A final status conference was held February 24, 2005. The trial court's minutes of that conference state "[t]he parties stipulate to a waiver of jury." A bench trial was conducted on March 1, 2005. At trial, David Hoffer was one of the attorneys representing Gonshor and Hospitality.

On the morning when the trial began, Cadle moved to preclude Rattan and Hospitality from defending the action. Cadle asserted it had conducted a computer search of the records of the Secretary of State the day before and had learned that the corporate powers of both Rattan and Hospitality were suspended as of February 25, 2005. Attorney Hoffer acknowledged Rattan was a "defunct" corporation, but expressed voiced surprise over its suspension. He insisted that when he last checked on its corporate status, Hospitality had not been suspended. Hoffer asserted that, in any event, Hospitality was not a party to the litigation because it had not been served with the complaint. Because it appeared when answering the complaint, the trial court concluded Hospitality was a proper party. The motion to preclude the corporate defendants from defending the suit was granted, leaving Gonshor to defend the action alone.

---

[2] The Change Agreement also provides that interest accrues on the unpaid balance after each payment.

The trial court turned its attention to Gonshor's affirmative defense that the lawsuit was time-barred. The parties stipulated the Agreement, Guaranty and Change Agreement were admissible in evidence for this phase of trial. Neither side offered any additional documentary or testimonial evidence. Hoffer argued the transaction—which he asserted did not involve a negotiable instrument—was governed by, at most, an eight-year statute of limitations. (Code Civ. Proc., §§ 337, 360.5; 12 U.S.C. § 1821(d)(14).) He insisted the lawsuit, initiated nearly 10 years after the Change Agreement's December 31, 1993 final due date, was filed almost two years too late. Disagreeing with Hoffer's position, the trial court found the action timely and commenced the trial.

Cadle's attorney indicated that, while he was ready to examine his client, he also wanted to question Gonshor, who had not appeared for trial. Attorney Hoffer said he needed five minutes to call Gonshor, who lived nearby. A brief recess was taken to afford Hoffer an opportunity to call Gonshor. Gonshor, however, never appeared for trial. Instead, when the trial resumed, Cadle's attorney announced that defense counsel had informed him he was "willing to stipulate to the numbers," and "all that remain[ed was] to argue the effect of the [Guaranty] as a matter of law." Defense counsel agreed the absence of the corporate defendants had converted the action into a "collections case," and the only remaining dispute concerned the legal effect of Gonshor's Guaranty as to the Change Agreement. Cadle made an offer of proof that the total balance due was $240,904.51 ($104,392.17 in principal, plus interest of $136,512.34, as of February 28, 2005). The parties stipulated to the admission of the Agreement, Guaranty and Change Agreement for this portion of the trial, and again declined to offer additional evidence. Following closing argument, judgment was granted in favor of Cadle against all three defendants. Cadle was ordered to prepare a proposed statement of decision and judgment, which were served on defense counsel and submitted to the trial court on March 2, 2005.

Hospitality, whose corporate powers had been suspended for failure to file a statutorily required information statement (Corp. Code, §§ 1502 & 2205), filed the required statement and obtained a "Notice of Revivor" dated March 3, 2005.[3] The record does not indicate that Hospitality ever notified the trial court of the revival of its corporate powers. On March 25, 2005, the court issued a statement of decision and entered judgment.

In mid-April 2005, Cadle filed a memorandum of costs and a motion seeking approximately $10,700 in contractual attorney's fees. (Code Civ. Proc., §§ 1032 & 1033.5.) In response, defendants did not object to Cadle's request for attorney's fees, but did object that Cadle was seeking double

---

[3] Appellants' request for judicial notice is granted.

recovery for certain attorney's fees already recovered. The trial court awarded Cadle $8,000 in attorney's fees. This appeal followed.[4]

## DISCUSSION

### 1. *Gonshor's waiver of a jury trial was effective.*

Gonshor insists that contractual provisions, such as the guaranty provision by which parties agree to waive a jury trial before the emergence of any dispute, are unenforceable. Gonshor's recitation of the legal principle is correct. In *Grafton Partners v. Superior Court* (2005) 36 Cal.4th 944 [32 Cal.Rptr.3d 5, 116 P.3d 479], the Supreme Court held that Code of Civil Procedure section 631, subdivision (d) identifies six exclusive means by which a jury trial may be waived in a civil case. (36 Cal.4th at p. 956.) " 'California constitutional history reflects an unwavering commitment to the principle that the right to a civil jury trial may be waived only as the Legislature prescribes,' " and no statute specifically authorizes predispute jury waivers. (*Id.* at p. 955.) The principle, however, does not apply here.

First, the record fails to reflect that the stipulation to waive a jury trial was based on a predispute contractual waiver. The sole reference to the waiver is found in the minute order stating only that "[t]he parties stipulate[d] to a waiver of jury" at the final status conference. Gonshor's assertion he "lost [his] right to a jury trial" because Hoffer was "reminded that the Guaranty contained a pre-litigation jury trial waiver" is thus improper and unsupported by the record.

Second, Gonshor's oral consent, stated in open court and entered in the court minutes, provides an independent basis for a jury waiver. (Code Civ. Proc., § 631, subd. (d)(3).) Gonshor's argument that the waiver was ineffective because it was made by attorney Hoffer is unavailing. Trial counsel is authorized to exercise his independent judgment with respect to strategic litigation decisions. (See, e.g., *In re Horton* (1991) 54 Cal.3d 82, 95 [284 Cal.Rptr. 305, 813 P.2d 1335].) If a client disagrees with his attorney's decision, he is obligated to repudiate the decision or alert the court. Gonshor did neither. In addition, he did not attend the trial nor did he assert any objection to the stipulation to waive a jury. Moreover, Gonshor did not file a posttrial motion, retain new counsel to represent him, or make an effort to seek relief from his attorney's allegedly unauthorized jury waiver until he filed his appellate briefs more than a year after trial concluded. Numerous courts have found that similar acquiescence constitutes evidence of

---

[4] The discussion related to the corporate defendants is limited to Hospitality as only it and Gonshor are parties to this appeal.

"express consent" to a jury trial waiver within the meaning of section 631. (See *Taylor v. Union Pac. R.R. Corp.* (1976) 16 Cal.3d 893, 900 [130 Cal.Rptr. 23, 549 P.2d 855] [" '[A] party cannot without objection try his case before a court without a jury, lose it and then complain that it was not tried by jury' "]; *Escamilla v. California Ins. Guarantee Assn.* (1983) 150 Cal.App.3d 53, 58 [197 Cal.Rptr. 463]; *Pink v. Slater* (1955) 131 Cal.App.2d 816, 817 [281 P.2d 272].) If Gonshor believed his right to a jury had been denied, he should have stated his objections on the record, requested postjudgment relief from the trial court, or promptly sought appellate review by writ of mandate. (*McIntosh v. Bowman* (1984) 151 Cal.App.3d 357, 364 [198 Cal.Rptr. 533].) Gonshor may not simply sit by in silence, take his chances on a favorable judgment and then, after an adverse judgment, complain on appeal. In short, a party may not play a game of " 'Heads I win, Tails you lose' with the trial court." (*Tyler v. Norton* (1973) 34 Cal.App.3d 717, 722 [110 Cal.Rptr. 307].) The jury waiver was therefore valid.

2. *Granting Cadle's motion to preclude the suspended corporation from asserting a defense and seeking entry of judgment was erroneous.*

Hospitality insists the trial court erred in granting Cadle's motion to prohibit Hospitality from defending the action and to seek entry of judgment against it because: (1) Hospitality received inadequate notice of the motion that was filed and served only as the trial began; (2) the trial court should have continued the trial to permit Hospitality to revive its corporate powers, which occurred within two days of trial; and (3) the entry of judgment was too harsh a remedy.[5]

a. *No evidence indicates Cadle delayed notifying the court or counsel of Hospitality's suspension.*

A corporation's suspended status and lack of capacity to defend an action is a plea in abatement that must be asserted at the earliest opportunity. (See *Color-Vue, Inc. v. Abrams* (1996) 44 Cal.App.4th 1599, 1605 [52 Cal.Rptr.2d 443] [finding a plea was waived by virtue of party's failure to raise the issue for almost two months in advance of trial].) Although Cadle did not serve or file its motion until the morning of trial, the record does not indicate Cadle knew about the corporations' suspended status until the day before trial began. Nothing in the record reflects the actual suspension dates for Hospitality or Rattan, or indicates how Cadle might or should have learned of the suspension at an earlier date and brought it to the court's attention. Rather, it appears Cadle alerted the court immediately after learning

---

[5] Hospitality also asserts Cadle presented insufficient proof of actual suspension. Subsequent events make this argument moot.

of the suspension. ■ Because Hospitality had no right to defend or participate in the lawsuit during the suspension of its corporate powers, Cadle's motion was appropriate. (See *Alhambra-Shumway Mines, Inc. v. Alhambra Gold Mine Corp.* (1957) 155 Cal.App.2d 46, 50 [317 P.2d 649] (*Alhambra- Shumway Mines, Inc.*) [issue of corporate suspension is appropriately raised after commencement of proceedings, even as late as last day of trial].)

> b. *A brief trial continuance would have enabled Hospitality to seek reinstatement.*

Even though Cadle did not delay notifying the trial court or counsel of Hospitality's suspension, the court abused its discretion in entering judgment against the corporate defendant. A brief trial continuance would have permitted Hospitality—whose attorney was clearly caught off guard by Cadle's revelation—to file the required informational statement, restore the corporation's good standing with the state, and defend the litigation.

■ A claim of lack of corporate capacity to prosecute or defend a civil action because of its suspended status " 'is a plea in abatement which is not favored in law.' " (*Traub Co. v. Coffee Break Service, Inc.* (1967) 66 Cal.2d 368, 370 [57 Cal.Rptr. 846, 425 P.2d 790].) The primary purpose of statutes depriving suspended corporations of privileges enjoyed by a going concern, including the capacity to sue or defend litigation, is to motivate delinquent corporations to pay back taxes or file missing statements. (See *id.* at p. 370; *Peacock Hill Assn. v. Peacock Lagoon Constr. Co.* (1972) 8 Cal.3d 369, 371 [105 Cal.Rptr. 29] (*Peacock Hill*); *Palm Valley Homeowners Assn., Inc. v. Design MTC* (2000) 85 Cal.App.4th 553, 561 [102 Cal.Rptr.2d 350].) The suspension statutes are not intended to be punitive. Once the statutory goals underlying suspension are met, no purpose is served by imposing additional penalties. (*Peacock Hill, supra,* 8 Cal.3d at p. 371; *Gar-Lo, Inc. v. Prudential Sav. & Loan Assn.* (1974) 41 Cal.App.3d 242, 244 [116 Cal.Rptr. 389].) Leniency permits a delinquent corporation to secure a revivor, even at the time of the hearing, at the request of the corporation or on the trial court's own motion. (*A.E. Cook Co. v. K S Racing Enterprises, Inc.* (1969) 274 Cal.App.2d 499, 500 [79 Cal.Rptr. 123]; *Peacock Hill, supra,* 8 Cal.3d at p. 372, fn. 2, citing *Schwartz v. Magyar House, Inc.* (1959) 168 Cal.App.2d 182 [335 P.2d 487].) When a corporation's suspended status "comes to light during litigation, the normal practice is for the trial court to permit a short continuance to enable the suspended corporation to effect reinstatement . . . to

defend itself in court. [Citation.]" (*Timberline, Inc. v. Jaisinghani* (1997) 54 Cal.App.4th 1361, 1366 [64 Cal.Rptr.2d 4].)

■ For reasons not apparent from the record, Hospitality's counsel did not request a continuance and the trial court did not continue the trial on its own motion. Hospitality was able to secure a revivor two days after the trial. The corporation inexplicably neglected to notify the court of that pivotal development either before or after entry of judgment, and never asked the court to reconsider its ruling or vacate the judgment. Had Hospitality done so, the revival of its corporate status would have validated the earlier acts and permitted the corporation to proceed with the action. (*Peacock Hill, supra,* 8 Cal.3d at pp. 373–374.) The question is whether this principle governs where a previously suspended corporation delays until filing its appellate brief to reveal that its corporate status was revived two days after trial and several weeks before entry of judgment. Notwithstanding the excessive passage of time, we conclude it does. Our conclusion is compelled by *Peacock Hill* which held that all acts of a suspended corporation, taken before or after judgment, are validated by revival. (*Ibid.*)

c. *The remedy granted was too harsh.*

■ In entering judgment against the suspended corporation, the trial court imposed too harsh a remedy. Certainly, a suspended corporate defendant may not defend or participate in an action. (*Alhambra-Shumway Mines, Inc., supra,* 155 Cal.App.2d at pp. 50–51.) However, in that situation, the appropriate remedy is to strike the corporation's pleadings and refuse to consider its defenses. (*Id.* at p. 51.) Alternatively, the plaintiff may proceed with a default prove-up or, on the court's own motion or at the corporation's request, the proceedings may be briefly continued to permit the incapacitated entity to secure reinstatement and trial participation. (See *Schwartz v. Magyar House, Inc., supra,* 168 Cal.App.2d at pp. 187–189; *Traub Co. v. Coffee Break Service, Inc., supra,* 66 Cal.2d at p. 370, fn. 3.)[6] By virtue of its revived corporate status, Hospitality is entitled to a reversal—even at this late date—and an opportunity to defend this action. Cadle does not claim prejudice if required to prosecute an action against Hospitality. Even if it did, any prejudice Cadle would incur is outweighed by the strong public policy

---

[6] Cadle's assertion that *Grell v. Laci Le Beau Corp.* (1999) 73 Cal.App.4th 1300 [87 Cal.Rptr.2d 358] supports its right to obtain judgment against Hospitality goes too far. In that case, the court affirmed summary judgment on statute of limitations grounds only after plaintiffs agreed their action was time-barred unless the statute of limitations was tolled during the corporation's suspension. (*Id.* at p. 1306.)

disfavoring pleas in abatement. Suspension of a corporation is intended to encourage it to pay taxes, not to provide a monetary windfall to private parties.

Cadle insists a reversal is unnecessary because Hospitality's corporate defenses are moot. Cadle is mistaken. Hospitality has not had an opportunity to litigate its defenses. For example, as an entity that did not exist before 1995, Hospitality claims it was not a party to and cannot be liable on the contracts. In its answer, Hospitality has asserted it was "erroneously sued . . . as [Rattan], a defunct California corporation." Based on this language, Cadle asserts Hospitality is Rattan's alter ego. However, the record contains no evidence to substantiate Cadle's assertion. Similarly, Hospitality was not able to present evidence that, if found to be a party to any agreement, it fully or partially performed its obligations under the agreement. Gonshor's stipulation to "the numbers" at trial, and the parties agreement that the only issue was the Guaranty's effect on the Change Agreement, may have resulted from Gonshor's attorneys' conclusion they could not present any evidence or defense on behalf of the corporation.[7] If so, Hospitality's liability was a foregone conclusion. Had Hospitality been allowed to participate in the action following its revival, it may have been able to offer evidence in its defense, or evidence it fully or partially performed its contractual obligations.[8] Factual issues therefore remain as to Hospitality's liability.

We recognize our conclusion may possibly result in inconsistent judgments in an action against a principal debtor and its surety on the same debt. This

[7] Ordinarily a surety may assert any defenses or setoffs the principal corporate debtor could have raised, had the corporation not been disabled and unable to defend itself in court by virtue of its suspension. (*Kalfountzos v. Hartford Fire Ins. Co.* (1995) 37 Cal.App.4th 1655, 1659–1660 [44 Cal.Rptr.2d 714], disapproved on other grounds in *Wm. R. Clarke Corp. v. Safeco Ins. Co.* (1997) 15 Cal.4th 882, 896 [64 Cal.Rptr.2d 578, 938 P.2d 372].) The record does not indicate why Gonshor did not assert any defenses. That decision may have been strategic or a mistake on the part of his trial counsel. Perhaps the decision is explained by a clause in the guaranty wherein Gonshor agreed to "waive[] any right to assert against [Cadle] any defense (legal or equitable), set-off . . . which [Hospitality] may now or at any time" have against Cadle. Whatever the reason, at least as to Gonshor, the issue is waived now.

[8] However, we reject defendants' attempt to obfuscate the straightforward issue of the applicable statute of limitations. The trial court was correct: The Change Agreement—like its predecessor, the Agreement—is a promissory note, a negotiable instrument. It establishes a payment schedule, but also provides that a missed payment need not be considered a breach if the full debt is satisfied by December 31, 1993. Commercial Code section 3118, subdivision (a) establishes a six-year statute of limitations, from the final due date, for promissory notes payable at a definite time. The Change Agreement also contains a written waiver of defenses. Code of Civil Procedure section 360.5 provides that, if the limitations period is waived, the waiver may extend the statute an additional four years. Thus, this action, filed on September 30, 2003, was brought within the 10-year statute of limitations, and is timely. Commercial Code section 3118, subdivision (b) does not govern this action inasmuch as that statute applies only to "pure" demand notes, i.e., those lacking any due date.

possibility would not have arisen if the trial had been continued at the outset, or if appellants had brought the fact of the corporation's reinstatement to the trial court's attention in a timely fashion. Nevertheless, we are left with the possibility that, after trial on remand, Gonshor may be liable to Cadle on a judgment for an amount greater than that owed by Hospitality. Such a result would be inequitable. "The obligation of a surety must be neither larger in amount nor in other respects more burdensome than that of the principal; and if in its terms it exceeds it, it is reducible in proportion to the principal obligation." (Civ. Code, § 2809; see *Brunswick Corp. v. Hays* (1971) 16 Cal.App.3d 134 [93 Cal.Rptr. 635].) Accordingly, if the judgment against Gonshor has not been satisfied, the court may consider staying execution pending outcome of further proceedings against Hospitality. In the event the judgment on remand is in Hospitality's favor or Hospitality is found liable in an amount less than that owed by Gonshor, the trial court is directed to vacate that judgment and enter a new and different judgment consistent with the judgment after the trial between Cadle and Hospitality.

3.  *Cadle's attorney's fee request was not improper.*

Defendants argue the trial court's award of attorney's fees and prejudgment interest exceeded its jurisdiction because the prayer in the complaint did not request attorney's fees or interest, and Cadle never requested in the body of the complaint a specific amount of fees. Defendants thus insist they were not properly notified of Cadle's intention to seek fees and interest. (Code Civ. Proc., § 580.) Although the partial reversal of the judgment requires vacation and reapportionment of the fee award, it is important for purposes of remand to note appellants are mistaken on the law.

The attorney's fee award was made in accordance with the parties' contracts. The amount of fees ultimately owed cannot be known when a complaint is filed; it can only be specified and sought by a noticed posttrial motion. (Code Civ. Proc., § 1033.5, subd. (c)(5).) In each cause of action, Cadle's complaint states that, in addition to damages, it intended to seek attorney's fees under the parties' written agreements. In *Feminist Women's Health Center v. Blythe* (1995) 32 Cal.App.4th 1641 [39 Cal.Rptr.2d 189], attorney's fees were sought as part of a default judgment and the defendant was given no notice or opportunity to oppose a motion. In this action, the complaint alerted defendants that recovery of attorney's fees was part and parcel of each of Cadle's claims, and the complaint's face page also indicated attorney's fees were sought. No additional notification was necessary.

## DISPOSITION

The judgment against Hospitality is reversed and the matter remanded for trial as to Hospitality. The judgment against Gonshor is affirmed. However, in the event judgment on remand is in favor of Hospitality or it is found liable in an amount less than the judgment against Gonshor, and the judgment against Gonshor is not satisfied, the trial court is directed to vacate that judgment and enter a new and different judgment consistent with the judgment in the trial between Cadle and Hospitality. The orders waiving jury trial and denying the statute of limitations defense are affirmed. The order awarding attorney's fees is reversed. Each party is to bear his or its own costs of appeal.

Rubin, Acting P. J., and Flier, J., concurred.

Respondent's petition for review by the Supreme Court was denied January 17, 2007, S148648. Moreno, J., did not participate therein.