Filed 10/11/24  Thannhaeuser v. TKH Zuma, LLC CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| CHRISTOPHER THANNHAEUSER, | B318438 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. 19STCV11326) |
| v. | |
| TKH ZUMA, LLC, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, David Sotelo, Judge.  Affirmed.

Kordestani Legal Partners, Harrison P. Kordestani; Sutter Maritime and Howard T. Sutter for Defendant and Appellant.

Myers Law Group and Robert M. Kitson for Plaintiff and Respondent.

————————————

In this landlord-tenant dispute, the trial court entered judgment against landlord TKH Zuma, LLC (Zuma) in the amount of $114,000, after a trial during which Zuma's corporate powers were in suspension by the Franchise Tax Board (FTB). As a consequence, Zuma did not participate in the trial. Zuma appeals, contending the trial court abused its discretion in denying Zuma's motion to continue the trial to permit Zuma to revive its corporate powers, erred in awarding damages to tenant Christopher Thannhaeuser without sufficient supporting evidence, and erred in awarding statutory damages under Civil Code section 1950.5[1] without making a specific finding of bad faith on the record.

We affirm the judgment.[2]

## BACKGROUND

Thannhaeuser rented a residential property in Malibu from Zuma for $13,000 per month pursuant to a written lease agreement. The term of the initial lease was from December 15, 2014 to December 15, 2015. At that time, Theodore Phelps managed the Malibu property as a court-appointed receiver for Zuma and the property. Thannhaeuser paid a $26,000 security deposit.

---

[1]     Undesignated statutory references are to the Civil Code.

[2]     Thannhaeuser has filed a request for judicial notice of 13 documents. We grant the request as to Exhibits 1, 2, and 10 only. Exhibits 1 and 2 are pleadings which confirm the dates of the receivership for Zuma. Exhibit 10 is a document filed by Zuma in small claims court after Zuma sought a continuance in this court on the ground of lack of capacity. The dates of the remaining exhibits render them irrelevant to any issue on appeal.

According to Thannhaeuser and his real estate agent Dennis Beesley, the property was not in move-in condition when Thannhaeuser took possession.  Thannhaeuser described "garbage everywhere. . . . It was very, very dirty."  "There was some damage to the walls.  A few things were broken."  Thannhaeuser hired a company to remove the debris, a professional cleaning company, and someone to do "paint work and things like that to clean it up."

Thannhaeuser continued to encounter problems with the residence.  The air conditioning would often go off due to its poor condition.  The stove and the gas connection to the stove had problems.   There were "very often" indoor plumbing problems.  Real estate agent Beesley assisted Thannhaeuser in resolving many of the problems.  Basically, Beesley coordinated with the receiver; many repairs were done under a home warranty agreement.

The pool was a constant problem.  The pool maintenance company hired by the owner would rarely come; the heating did not work.  The chlorine/salt mixture did not work, resulting in murky green water covered with a white layer.  Thannhaeuser hired his own pool maintenance company.

The outdoor lighting worked only intermittently.  At some point, Thannhaeuser hired his own electrician to replace all the outdoor lighting.

During the time that Phelps was the receiver, Thannhaeuser obtained approval for the work on the property from Phelps or his agents.

In December 2015, the lease was extended for a year.  In late February 2106, the receivership was discharged.  In early

March 2016, Thannhaeuser learned that Mary Anne Keshen had become the property manager.

According to Thannhaeuser, the property continued to have maintenance problems. Keshen was very slow to have the problems repaired or was non-responsive. At some point, Keshen quit paying the gardener and pool maintenance company; gardening and pool maintenance were the landlord's responsibility under the lease. When a new gardener was hired, Thannhaeuser paid him.

At trial, Thannhaeuser was asked to estimate the amount he paid "out of pocket from . . . May of 2015, a few months after the lease began, until the end of the lease . . . for things that were supposed to be taken care of by the landlord under the lease[.]" He replied: "Must have been well over $20,000. It was continuous little things and a few bigger ones." Thannhaeuser did not provide any breakdown of this amount.

Thannhaeuser also testified that he received a water bill for $19,653.49 in May 2016, as the result of a water leak at the property.[3] It is undisputed that the leak was in the irrigation system. Gardener Ruben Banuelos testified that he discovered the leak in a main irrigation pipe on the hillside behind the house. Thannhaeuser paid the water bill, in installments, because otherwise the water to the property would have been cut off.

---

[3] The water company later reduced the total by $2,500 as "a courtesy." This would make the total owed 17,153.49. The trial court appears to have awarded $16,000 for this injury.

4

Thannhaeuser did not renew the lease when it expired on December 14, 2016, but stayed in the house as a month-to-month tenant.

On January 5, 2017, Zuma's agent Aaron Eslamboly posted a 30-day notice of termination of Thannhaeuser's tenancy. On January 13, 2017, Eslamboly emailed Thannhaeuser: "Please keep in mind that rent is due on the 15th. Meaning that if you intend to stay further throughout the 30-day period past the 15th, then you will owe rent for each day you are there at a rate of $500/day." Thannhaeuser emailed Eslamboly the same day, stating that he had vacated the property. Thannhaeuser requested an appointment for a walk-through inspection and the return of his security deposit after the walk-through.

Zuma refused to return any of the security deposit. Zuma stated it was withholding $15,000 as unpaid rent, and the remainder for damages to the property. Zuma charged Thannhaeuser an additional $11,000 above the security deposit amount for "various costs."

Realtor Beesley accompanied property manager Keshen when she inspected the property on March 22, 2016, shortly after she took over property management. She did not raise anything negative about the condition of the property. She made no negative remarks about Thannhaeuser's tenancy. She did make negative comments about the receiver. Beesley was also present for the final walk-through inspection after Thannhaeuser vacated the property. Beesley did not observe any substantial damage to the property. He opined that Thannhaeuser had made "major improvements on the property." In Beesley's opinion as a real estate agent, there was nothing attributable to Thannhaeuser about the condition of the property that amounted to more than

ordinary wear and tear.  Beesley believed that the property was left in better condition than when Thannhaeuser moved in.

Thannhaeuser filed this action against Zuma and Keshen on April 2, 2019, alleging causes of action for breach of written contract, conversion, violation of section 1950.5, violation of section 1941.1, and breach of the warranty of quiet enjoyment. Zuma filed a general denial in October 2019 and a cross-complaint in March 2020.  We take judicial notice of the fact that the COVID 19 pandemic resulted in a slowdown in California state services beginning in March 2020.

In January 2021, the trial court set a final status conference for June 9, 2021 and the trial for July 6, 2021.  On May 24, 2021, the trial court ordered the parties into mediation.

On June 9, 2021, the final status conference was continued to October 8, 2021 and the trial date was continued to November 2, 2021.  The minute order for June 9, 2021 states both continuances were on the trial court's own motion.

According to Thannhaeuser, the court confirmed the mediation requirement at the June 9, 2021 status hearing.  The parties scheduled mediation for September 21, 2021, but it was subsequently continued to September 30, 2021.

On July 22, 2021, for reasons which are not clear from the record, Thannhaeuser's attorney sent an email to Zuma's attorney.  (The email is partly redacted.)  The last paragraph of the email states: "On a related matter, **TKH Zuma, LLC, has again been suspended by the California Secretary of State**, this time apparently based on action by the FTB.  As a result, as has been previously discussed over emails between us, and based on the authorities cited therein, **TKH Zuma may not litigate in California**, unless and until it gets itself back in

6

good standing with the Secretary of State. If a motion for judgment on the pleadings is filed by TKH Zuma, prior to TKH [Zuma] regaining active status with the Secretary of State, Plaintiff will apply *ex parte* for an order striking the motion on that basis. In the meantime, please accept this email as a meet and confer on a motion by Plaintiff to strike Defendant's General Denial and move for default judgment, on the basis of TKH Zuma's suspension by the Secretary of State."

The record does not include a motion to strike the General Denial or for default. The next pleading in the record is a case management statement filed by Zuma on October 1, 2021. Both that statement and Thannhaeuser's October 1, 2021, Post-Mediation Status Conference Statement show that Zuma cancelled the mediation on September 30, 2021, less than 3 hours before it was to begin because Zuma was a suspended corporation and lacked the capacity to enter into a settlement agreement.

As part of its case management statement, Zuma sought a continuance of the trial date based on Zuma's suspended status. In an attached memorandum of points and authorities, Zuma acknowledged that it "was temporarily suspended toward the end of 2020" but stated that Zuma's managing member "did not become aware of the suspension until just recently." Zuma also inconsistently stated that the managing member, Mary Anne Keshen, "was not made aware of the suspension until late Spring of 2021." Zuma also stated that Keshen had received "professional advice" that the process of revivor could take up to six months.

On October 6, 2021, Zuma filed a pleading entitled Notice of Non-Waiver of Jury. On October 8, 2021, Zuma filed a pleading entitled TKH Zuma, LLC Initial Jury Fees Posting.

7

On October 8, 2021, the trial court held a status conference. The parties discussed the request for a continuance and the trial court impliedly denied the request by ruling that the November 2, 2021 trial date would stand. The request for a continuance is not mentioned in the minute order for the hearing.

On October 19, 2021, Zuma filed an ex parte application to continue the trial. Zuma stated that it "was temporarily suspended though unknowingly so until recently." Zuma asked for an unspecified amount of time to "resolve this temporary suspension and defend itself at time of trial." Zuma stated that "[a]fter discovery of the suspension, which was not confirmed until just recently, the managing member of the Defendant entity has been seeking to determine the cause of the suspension as well as how to remedy it. After repeated attempts to resolve the issue with the FTB itself, [Keshen] hired a firm specializing in reviving suspended entities and is working diligently with that company in good faith, to resolve this temporary suspension. . . . (see Exhibit A to the Declaration of May Anne Keshen). However, based on discussions with this company there is no certainty as to when the suspension may be lifted and could take a few months."

The Keshen declaration does not provide a date for the discovery of the suspension. The declaration states: "We only recently found out that the entity was suspended by the FTB. There was no confirmation of this until my assistant conducted a site check of the California Secretary of State website. . . . We are diligently working on getting this resolved as soon as possible. There are numerous legal matters that this impacts, it is not limited to this matter. We enclosed a true and correct copy of the receipt of the company that assists corporations in the revivor process (Exhibit A)." The document attached as Exhibit A is

undated and is not a receipt. It reflects an order for services, and states that an invoice or receipt will be forthcoming. There is no indication who placed the order.

Exhibit B to the Keshen declaration is an email from the mediator concerning the cancelled mediation. The email confirms the mediation was cancelled by Zuma on September 30, 2021, and the reason given was Zuma's suspension by the California Franchise Tax Board. Among other things, the mediator notes that "[b]oth sides [had] submitted to me substantial, confidential briefs and cooperated fully with my requests for additional information."

The trial court rejected this application for a continuance because it lacked a proposed order.

On October 26, 2021, Zuma filed a renewed ex parte application for a continuance. In this new pleading, Zuma stated "Defendant has not been informed that there are any outstanding taxes or fees at this time. Defendant only recently found out that the entity was suspended by the FTB." The application also states: "It is an impossibility [due to Covid restrictions] that reinstatement will occur before year end, which is significantly after the trial date of November 2nd, 2021." The Keshen declaration in support of this application was virtually identical to her earlier declaration, with the exception of the statement that Zuma's attorney "Howard Kordestani is withdrawing with the mutual consent of TKH Zuma, LLC for significant personal reasons." (Mr. Kordestani represented Zuma at least through the briefing stage of this appeal, and we see no indication of any withdrawal in the trial court.) Thannhaeuser objected to the filing on the ground that it contained no new information.

9

Zuma contends the trial court held a hearing on this second ex parte application on October 27, 2021 and denied the application "without providing any legal or factual basis for its ruling." The record does not include a transcript of that hearing, or a minute order for that date. The November 24, 2021 Keshen declaration is no way an adequate substitute for those documents. We can infer that the continuance was denied from the fact that the trial took place as scheduled on November 2, 2021. The record simply does not reflect whether or not the trial court indicated the reasons for its ruling.

Trial did proceed on November 2, 2021. Zuma did not participate because it remained suspended on that date. The case was tried by the court. Banuelos, the gardener hired by Thannhaeuser, testified on the first day of the trial, and Thannhaeuser and Dennis Beesley, the realtor who assisted Thannhaeuser with the lease, testified on the second day. On November 3, 2021, the trial court found in favor of Thannhaeuser and awarded him $114,000. Zuma's attorney did not attend the trial.

On November 15, 2021, the FTB issued a Certificate of Revivor for Zuma.

Thannhaeuser submitted a proposed written judgment for the trial court's signature. On November 17, 2021, Zuma filed a written objection to the proposed judgment on the ground that it was "refused the right to participate in the trial." Zuma stated that it now had a Certificate of Revivor. Zuma contended it had been suspended because the yearly franchise tax fees "had not been paid by the Receiver during his management of the LLC." The receivership had ended on February 29, 2016. It appears

Zuma did not schedule or reserve a date for a hearing on this objection.

On December 1, 2021, Zuma filed a motion to set aside or vacate the judgment, with a hearing scheduled for June 13, 2022. On December 10, 2021, Zuma filed a motion for new trial, with a hearing date to be determined. Zuma filed its notice of appeal on February 3, 2022.

## DISCUSSION

I. **Respondent's Contentions.**

Thannhaeuser contends that (1) Zuma's designation of an incomplete record warrants dismissal of the appeal or a summary decision in Thannhaeuser's favor; and (2) Zuma is judicially estopped from asserting error in the trial court's denial of its motion to continue because Zuma was actively litigating other cases as a plaintiff at the same time. Thannhaeuser also makes a third, confusing argument that a suspension for tax deficiency is "an absolute jurisdictional bar and revival is not retroactive."

A. *The Record, Through Incomplete, Is Adequate for Appellate Review.*

"[A] respondent seeking a dismissal after the record is filed in the reviewing court must, unless the rules provide otherwise, 'serve and file a written motion stating the grounds and the relief requested and identifying any documents on which the motion is based.' (C.R.C., Rule 8.54(a)(1).) (See *American Alternative Energy Partners II v. Windridge* (1996) 42 C.A.4th 551, 557, 49 C.R.2d 686, citing the text.)" ( 9 Witkin, Cal. Proc. (6th ed. 2021) Appeal, § 768, pp. 790–791.) Thannhaeuser did not file such a motion, and so we do not consider his claim that the appeal should be dismissed.

11

We consider, and reject, Thannhaeuser's alternate contention that the state of the record warrants a summary decision in his favor.[4]

We agree with Thannhaeuser that Zuma failed to designate the reporter's transcript for the first day of trial, which included the relevant testimony of gardener Banuelos. Thannhaeuser, however, elected to cure that deficiency by moving to augment the record. We granted that motion. Similarly, Thannhaeuser elected to lodge the trial exhibits with us. The trial court announced its decision from the bench, and the written judgment is part of the designated record on appeal. Thus, the record of the trial is complete.

The completeness of the record as to the application for a continuance is less clear. There is no dispute that the trial court denied the request for a continuance without explanation at the status conference hearing and then rejected the first ex parte application because it was procedurally non-conforming. The record does not include the reporter's transcript of any hearing on the second (or renewed) ex parte application for a continuance. There is no dispute that it was denied, but without some record of proceedings on that date, we have no idea if the trial court provided an explanation or not. Zuma, as the party challenging the ruling on the continuance, bears the burden of establishing an abuse of discretion. (*People v. Fuiava* (2012) 53 Cal.4th 622, 650 (*Fuiava*).) We will review the ruling to determine

---

[4]     Thannhaeuser appears to contend that the record designated by Zuma is both under and over inclusive. We are not aware of any prohibition on designating the entire trial court record on an appeal from a final judgment.

12

whether Zuma has shown that there could be no reasonable basis to deny the motion.

B.    *Judicial Estoppel Does Not Apply.*

Thannhaeuser contends Zuma should be judicially estopped from claiming the trial court erred in denying a continuance of the trial because it was actively litigating a small claims matter against Thannhaeuser.[5]

Judicial estoppel applies when: "(1) the same party has taken two positions; (2) the positions were taken in judicial or quasi-judicial administrative proceedings; (3) the party was successful in asserting the first position (i.e., the tribunal adopted the position or accepted it as true); (4) the two positions are totally inconsistent; and (5) the first position was not taken as a result of ignorance, fraud, or mistake." (*Jackson v. County of Los Angeles* (1997) 60 Cal.App.4th 171, 183.)

" ' " 'Judicial estoppel is "intended to protect against a litigant playing 'fast and loose with the courts.' " ' " ' " (*Minish v. Hanuman Fellowship* (2013) 214 Cal.App.4th 437, 449.)  In the matter before us, Zuma and Keshen accurately stated that Zuma lacked capacity to defend this action.  There is no dispute that Zuma was suspended, and the law is clear that a suspended corporation cannot defend itself.  Although Thannhaeuser has requested judicial notice of a few documents filed in the small

---

[5]    We decline to consider Thannhaeuser's argument that Zuma was litigating another matter involving Southern California Edison at the time.  Nothing from that matter is part of the record on appeal, and Zuma has not requested that we take judicial notice of the other proceedings.

claims court, they are not sufficient to warrant application of judicial estoppel.

Judicial estoppel often raises factual issues. (*Cloud v. Northrop Grumman Corp.* (1998) 67 Cal.App.4th 995, 1000.) Thannhaeuser has the burden of proof on this issue. Although judicial estoppel need not be raised in the trial court, when it is not, the record may be inadequate to support the doctrine.

A key element of judicial estoppel is that the contradictory position not be taken as a result of fraud, ignorance or mistake. Procedures are quite different in small claims court, and the pleading of which Thannhaeuser complains amounts to scheduling an event three months in the future.[6] The record does not show that Thannhaeuser raised this issue in the trial court, or that Keshen was given an opportunity to explain Zuma's small claims court litigation. Under these circumstances, we decline to apply judicial estoppel.

C. *Thannhaeuser Has Waived His Jurisdictional Bar and Non-Retroactive Revival Argument.*

Thannhaeuser has headed one of his argument subsections "Under Supreme Court Precedent, Suspension for Tax Deficiency Is an Absolute Jurisdictional Bar and Revival Is Not Retroactive." Thannhaeuser's argument under this heading

---

[6] We have granted Thannhaeuser's request to take judicial notice of the November 1, 2021 Order to Produce Statement of Assets and to Appear for Examination, attached as Exhibit 10 to the request. That pleading was filed when Zuma asserted its incapacity to defend this action. We have denied Thannhaeuser's request to take judicial notice of other documents from small claims court, all of which predate Zuma's assertion of incapacity in this action and so are not relevant. (*Ante*, fn. 2.)

14

consists of several pages of case citations and quotes. The application of this law to the facts of this case is not clear. (See *United Grand Corp. v. Malibu Hillbillies, LLC* (2019) 36 Cal.App.5th 142, 153 (*United Grand*) [It is an appellant's duty to supply the court with some cogent legal argument; we are not bound to develop an appellant's argument for it].)

To the extent Thannhaeuser contends that the trial court was not required to postpone the trial until Zuma revived its corporate powers, even if that meant Zuma would be barred from defending the action, we agree there is no absolute bar to denying a continuance under such circumstances. To the extent that Thannhaeuser argues Zuma was prohibited from making a motion to continue, there is a judicially recognized exception for that action. (*Schwartz v. Magyar House, Inc.* (1959) 168 Cal.App.2d 182, 188.) To the extent Thannhaeuser contends Zuma could not appeal from the judgment, he is mistaken. (*Bourhis v. Lord* (2013) 56 Cal.4th 320, 329 (*Bourhis*).) Any other arguments are waived.

II. **Appellant's Contentions.**

A. *Zuma Has Not Shown the Trial Court Abused Its Discretion in Denying a Continuance.*

Zuma contends it was an abuse of discretion for the trial court to deny a continuance to permit Zuma to pay its taxes and revive its capacity to defend this action. Thannhaeuser contends Zuma waived this claim by failing to appear on the first day of trial. We see no abuse of discretion by the trial court and no waiver by Zuma.

Thannhaeuser contends Zuma's failure to appear for trial waived its opportunity to have the trial court determine whether

15

"at the *time of trial*" Zuma had shown good cause to delay the trial date.  Thannhaeuser contends Zuma's decision to file a notice of "Statutory Prohibition for Participation at Trial" without seeking specific relief, coupled with Zuma's failure to appear at trial and object or make some sort of new motion, waived its right here to claim error in the trial court's decision to proceed without Zuma's presence.

The trial court had clearly communicated its intent to proceed with the trial even if Zuma remained suspended on November 2.  Absent some change in circumstances, Zuma was not required to make a futile motion to preserve its claim.

Zuma was not required to participate in the trial by objecting or making offers of proof.  To the contrary, the law is clear that a suspended corporation may not defend an action.  We are surprised Thannhaeuser would argue otherwise.  His reliance on *Bourhis* is misplaced.  That case reaffirmed the general rule that "a 'corporation may not prosecute or defend an action, nor appeal from an adverse judgment in an action while its corporate rights are suspended for failure to pay taxes.' " (*Bourhis, supra,* 56 Cal.4th at p. 324.)  Nothing in that case encourages, or even permits, a suspended entity to defend an action, and nothing supports retroactive validation of such actions.  *Bourhis* recognizes a very narrow exception, based on a long line of older cases, that retrospectively validates an invalid notice of appeal. (*Id*. at p. 328.)

Thannhaeuser also cites *Duncan v. Sunset Agricultural. Minerals* (1969) 273 Cal.App.2d 489.  In that case, the trial court permitted a suspended corporation to defend an action.  (*Id*. at p. 490.)  Whatever the merits of this approach were in 1969, the Legislature subsequently enacted Revenue and Tax Code section

19719, which makes it a misdemeanor for anyone "to exercise the powers, rights, and privileges of a corporation that has been suspended pursuant to [Revenue and Tax Code] section 23301." (Rev. & Tax Code, § 19719, subd. (a).) Thus, *Duncan* cannot be read as requiring a suspended party to defend an action and then seek revival to validate its defense.

Turning to the merits of Zuma's claim: We review a trial court's denial of a motion for continuance for an abuse of discretion. (See *Fuiava, supra*, 53 Cal.4th at p. 650.) Generally, however, a trial court should grant a short continuance to permit a suspended corporation to seek revival of its corporate powers, when the suspension comes to light shortly before trial. (*Cadle Co. v. World Wide Hospitality Furniture, Inc.* (2006) 144 Cal.App.4th 504, 512–513.) This is consistent with California Rules of Court, rule 3.1332, which authorizes a continuance on the ground of a "significant, unanticipated change in the status of a case as a result of which the case is not ready for trial." (Cal. Rules of Court, rule 3.1332(c)(7).)

That was not the factual circumstance present here. Zuma had been aware of its suspension for at least two months (and more probably four months) before it sought a continuance, and it sought a lengthy continuance. Further, given the length of time Zuma was aware of the suspension, it was Zuma's burden as the party seeking a continuance to demonstrate diligent efforts to revive its corporate powers once it admittedly learned of its suspension. This it failed to do.

As set forth above, Zuma gave vague but nonetheless varying accounts of when it learned of the suspension. At one point, Zuma stated Keshen was aware of the suspension in late Spring of 2021. Zuma did not dispute that it had received the

July 22, 2021 email from Thannhaeuser's counsel informing Zuma of the suspension. Zuma cancelled mediation on September 30, 2021 at the last minute due to the suspension, implying that it had just become aware of the suspension. In an October 8, 2021 filing Zuma stated, both, that it become aware of the suspension "just recently" and that Keshen learned of the suspension until "late Spring of 2021." Thereafter, Zuma reverted to using the phrase "just recently" or "only recently."

We conclude Zuma failed to make an affirmative showing that it was unaware of its suspension until shortly before trial. On appeal, Zuma contends that the above-described inconsistencies are minor and should not have resulted in a denial of the motion to continue. We cannot agree they are minor and Zuma has given us no reason to disregard the late spring or July dates.

In addition, Zuma provided only a vague account of the efforts it made during the time it knew it was suspended. Zuma did not provide any information about the specific efforts it made to contact the FTB: the dates and number of phone calls it made or the emails it sent. There is no summary of the information provided by the FTB. Similarly, Zuma did not provide a date for its order of services from the revivor firm.[7] Zuma also did not explain what those services were, or if the "Gold" package was the most expedited service available.

We hold Zuma failed to make a showing of diligence in curing its suspension and failed to provide this court with any

---

[7] In its briefing on appeal, Zuma gives a broad date of October 2021 and provides a record cite to support this claim. There is no date in the Keshen declaration or on the order confirmation from the revivor firm.

18

reason to excuse its failures. Although Zuma points to the continuing effect of the COVID pandemic on government services, Zuma was still required to show diligence under the circumstances. Zuma did not make even the minimal showing that it at least began its efforts at revival promptly upon learning (in late spring or July) of the suspension.

Zuma contends it was contrary to the purposes of the suspension statute to deny the continuance because being able to participate in litigation is what motivates a corporation to pay its taxes. Zuma knew of the early-November 2021 trial date since at least June 2021, and of its suspension since late spring or July, but provided no evidence that it acted with any urgency to remedy its suspension. The trial court could reasonably have concluded that Zuma had no intention of paying its taxes even if it received a continuance. Relatedly, given the length of the continuance sought by Zuma, the trial court could reasonably have concluded that Zuma was attempting to use its suspension to delay trial for a lengthy period, and at least for four months.

Indeed, Zuma contended in its first application that the revivor company estimated that reinstatement could take a few months. In her supporting declaration, Keshen stated only that FTB representatives said reinstatement would take "significant time." She did not mention an estimate from the revivor company. Keshen did not repeat her statement about the FTB representatives in her declaration in support of the renewed application and did not give any indication of a time estimate from the revivor company.

Ironically, Zuma contends that its revivor only two weeks after the trial shows that the trial court should have granted the continuance. We evaluate a trial court's ruling on the basis of the

19

information before the court at the time of the ruling. Zuma, of course, told the court it would need a lengthy period of time to obtain revivor. If we were to consider this evidence, we would note that the apparently quick resolution equally suggests that if Zuma had hired the firm two weeks earlier, it would not have needed a continuance.

B.      *Zuma Has Waived Any Claims Related to Its Post-Trial Motions.*

Zuma contends that it filed notice of its Certificate of Revivorship shortly after trial and prior to the entry of final judgment, a motion to vacate the judgment, objections to the judgment, and a motion for a new trial. We treat these pleadings as abandoned, and any claims concerning those motions waived.

The certificate of revivorship was filed on November 17, 2021 as an exhibit to Zuma's objection to the judgment. The record does not show that Zuma obtained a hearing date for that pleading. Zuma filed a "continued objection" on December 3, 2021, again with no indication that Zuma had obtained a hearing date. As Zuma acknowledges, it withdrew its motion to vacate and motion for a new trial.

C.      *Zuma Forfeited Its Argument That the Evidence Was Insufficient to Support Damages for "Out-Of-Pocket" Expenses.*

Under the broad heading "The Trial Court Erred in Failing to Require Respondent to Meet His Evidentiary Burdens in Presenting his Proof of Contractual Damages at Trial," Zuma makes only one specific factual argument: the trial court erred in accepting Thannhaeuser's verbal testimony that he incurred $20,000 in "out-of-pocket" expenses for "things that were

supposed to be taken care of by the landlord under the lease" without a "foundation based on factual proof" or sufficient documentary evidence of damages. Zuma also complains of Thannhaeuser's "vague and speculative testimony" concerning his out-of-pocket expenses, and lack of notice given to Zuma. The trial court expressly found Thannhaeuser's testimony credible.

Zuma relies entirely on the Evidence Code to support its argument. Although Zuma cites to and provides excerpts from a number of sections of the Evidence Code, Zuma does not make a cogent argument applying those sections to the facts of this case. For example, Zuma cites Evidence Code section 702 for the propositions that testimony may not be based on speculation or conjecture, and must be based on personal knowledge, but does not explain how Thannhaeuser lacked personal knowledge of the amount his out-of-pocket expenses for the property or how he was speculating about that amount. Accordingly, Zuma has forfeited this claim. (*United Grand, supra,* 36 Cal.App.5th at p. 162 [failure to explain how cited legal authority applies to facts of the case forfeits claim].) We are not required to develop an appellant's argument for it, and may disregard conclusory arguments that " 'fail to disclose the reasoning by which the appellant reached the conclusions [it] wants us to adopt.' " (*Id.* at p. 163 & fn. 5.)

D.   *There Is Sufficient Evidence to Support Damages Resulting from the Water Leak.*

Under the heading "The Trial Court Erred in Failing to Require Appellee to Prove His Breach of Contract Claim in Accordance with His Burden to Factually Support the Elements of Proof Required to Establish Duty and Breach of the Lease Agreement," Zuma's only specific factual contentions concern a

21

leak in the irrigation system which resulted in a $19,000 water bill.  Specifically, Zuma contends there is no evidence Thannhaeuser notified it in writing of the water leak, which resulted in a $19,000 water bill.  Thannhaeuser was awarded damages in that amount.  Zuma contends that, in the absence of such notice, the lease agreement  places responsibility for damages on Thannhaeuser, the tenant.

It appears to be true that the lease agreement required written notice, and that Thannhaeuser did not notify Zuma in writing of the leak.  Gardener Banuelos testified at trial that he discovered the water leak when he came to work; the leak was in a main irrigation pipe at "the bowels to the sprinkler system" on the hillside in the backyard, running down it.  Banuelos testified that he promptly called Dennis Beesley.  Beesley told Banuelos to shut off the water and repair the pipe, and Banuelos promptly shut off the water.  Banuelos's testimony is substantial evidence that no damages accrued as a result of a lack of written notice.  According to Banuelos, the water to the system was shut off as soon as the leak was discovered.  Put differently, the failure to notify Zuma in writing was not a substantial or material breach of the agreement which would relieve Zuma of its duty to perform.

Zuma contends Thannhaeuser did not prove it was responsible for damage to infrastructure or had a duty to inspect water piping.  While the lease provides that Thannhaeuser shall pay for water, the lease more pertinently provides that Zuma shall *water* and *maintain* the garden, landscaping, tree and shrubs.  Thannhaeuser testified that it was Zuma's responsibility to maintain the irrigation system under the lease.  This is a reasonable interpretation of the provision of the lease provision

requiring Zuma to water and maintain the landscaping. Banuelos, who discovered the leak on his first day on the job, testified the landscaping was in a state of extreme neglect. There is evidence that Zuma had stopped paying the former gardener who then stopped working, evidence that Zuma had breached its duty to maintain the landscaping, including the irrigation system.

Zuma also contends Thannhaeuser did not provide any evidence Zuma's breach of the lease caused Thannhaeuser's damages.[8] Specifically, Zuma contends that Thannhaeuser did not provide admissible proof that he actually paid the water bill. Zuma also appears to contend that there is no admissible testimony that Thannhaeuser received such a water bill. By this, Zuma appears to mean that Thannhaeuser's testimony violated Evidence Code section 1523, subdivision (a), which prohibits oral testimony to prove the contents of a writing.

Plaintiff's Trial exhibit 7, admitted into evidence, is a customer transaction summary from Valencia Heights Water Company which shows a charge of $19,653.49 on June 2, 2016, a -$2,500 adjustment by the water company on August 4, 2016 and a zero balance on November 21, 2016, as a result of six payments made between that date and the initial charge. Thannhaeuser was competent to testify that he received the written summary from the water company and took steps to effectuate the payments shown on it.

---

[8] Because Zuma's brief is not entirely clear, we again note that Thannhaeuser testified that maintenance of the irrigation system was Zuma's responsibility under the lease. Thus, Zuma was responsible for damages caused by the leak.

E. *The Trial Court Was Not Required to Make a Specific on-the-Record Finding of Bad Faith to Support Punitive Damages under Former Section 1950.5.*

Zuma makes a two-page argument which focuses entirely on its claim that the trial court was required to make a specific finding of bad faith on the record. Zuma has not cited, nor are we aware of, any case requiring the trial court to make a specific on-the-record finding of bad faith. We see nothing in the plain language of former section 1950.5, subdivision (l) which required such a specific finding. Subdivision (l) stated only: "The bad faith claim or retention by a landlord or the landlord's successors in interest of the security or any portion thereof in violation of this section, . . . may subject the landlord or the landlord's successors in interest to statutory damages of up to twice the amount of the security, in addition to actual damages. The court may award damages for bad faith whenever the facts warrant that award, regardless of whether the injured party has specifically requested relief. In an action under this section, the landlord or the landlord's successors in interest shall have the burden of proof as to the reasonableness of the amounts claimed or the authority pursuant to this section to demand additional security deposits." (Former § 1950.5, subd. (l), repealed on July 2, 2024.)

Although Zuma also asserts in subheading B that "There Was Not An Evidentiary Basis" for the award of damages, Zuma does not repeat this contention in the body of its argument, much less make a cogent argument as to why the evidence is not sufficient to support the award. Arguably, Zuma has waived this claim. (*United Grand, supra*, 36 Cal.App.5th at p. 153.) Even if we were to treat Zuma's statement that there is "nothing in the trial transcript that even mentions the required element of bad

24

faith" as an argument for lack of evidence, such an argument would fail. This is primarily an alternate way of stating that the trial court was required to make a specific finding of bad faith, which we have already rejected. Section 1950.5, subdivision (l) expressly states the tenant need not specifically request statutory damages, so even if Thannhaeuser did not mention bad faith, that omission would have no significance.

In its reply brief, Zuma does provide a more detailed factual analysis of the evidence, but we do not consider this analysis provided for the first time in the reply brief. (See *United Grand, supra*, 36 Cal.App.5th at p. 158 [issue raised for the first time in a reply brief " 'deprives the respondent of the opportunity to counter the appellant by raising opposing arguments' "].)

F.  *Any Post Judgment-Amendment of the Judgment Is Outside the Scope of This Appeal.*

Zuma contends that, in a March 25, 2022, minute order granting Thannhaeuser's motion for attorney fees, the trial court improperly amended the judgment to add a cite suggesting that Zuma was able to appear at trial. In this matter, Zuma has appealed from the judgment filed December 3, 2021. That is the operative judgment on appeal. Zuma has separately appealed from the attorney fees award, in case No. B321283. To the extent the claimed amendment is relevant to and raised in that appeal, we will consider it there.

## DISPOSITION

The judgment is affirmed.  Costs are awarded to respondent.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


STRATTON, P. J.

We concur:


WILEY, J.


VIRAMONTES, J.